# BURSOR & FISHER
P.A.

**888 SEVENTH AVENUE**
**NEW YORK, NY 10019**
**www.bursor.com**

**JOSEPH I. MARCHESE**
Tel: **646.837.7410**
Fax: **212.989.9163**
**jmarchese@bursor.com**

October 8, 2020

<u>*VIA ELECTRONIC CASE FILING*</u>

The Honorable Katherine Polk Failla, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: *In Re: GE/CBPS Data Breach Litigation,* Case No. 1:20-cv-2903 (KPF)

Dear Judge Failla:

  We are counsel for Plaintiffs Steven Fowler and Maher Baz ("Plaintiffs") in the above-referenced matter. Pursuant to 4.A of Your Honor's Individual Rules of Practice in Civil Cases, Plaintiffs write in response to the pre-motion conference letter ("Letter") filed by Defendants General Electric Company ("GE") and Canon Business Process Services, Inc. ("Canon") (collectively, "Defendants") on October 5, 2020 (Dkt. No. 41). In the letter, Defendants stated that they intend to file a motion to compel arbitration and if appropriate, a motion to dismiss. For the reasons set forth below, Defendants' request should be denied.

  **I. Motion to Compel Arbitration**

  Defendants claim that Plaintiff Baz signed an employment agreement with GE pursuant to which he agreed to a binding alternative dispute resolution procedure known as the "Solutions Procedure." *See* Letter at 1. Defendants' position is that Plaintiff Baz agreed to binding individual arbitration of the claims he now pursues in this case.

  However, Plaintiff Baz does not recall signing an arbitration agreement and the employee handbooks that we have in our possession do not include arbitration clauses. Defendants did not provide a copy of the arbitration agreement that Plaintiff Baz purportedly signed, or state any facts surrounding his consent to the arbitration agreement or whether Plaintiff Baz had notice.

  To promote judicial efficiency, prior to filing a motion to compel arbitration, Plaintiffs request that the Court order Defendants to produce the arbitration agreement so that Plaintiffs may assess (1) whether a valid arbitration agreement exists; (2) whether Plaintiff Baz's claims fall within the scope of the arbitration agreement; and (3) whether the arbitration agreement is enforceable. Allowing Plaintiffs an opportunity to first review and analyze the arbitration agreement will help Plaintiffs determine whether to move forward with Plaintiff Baz's claims.

Relatedly, Plaintiff Fowler's claims should not be stayed pending the outcome of any anticipated motion to compel arbitration with respect to Plaintiff Baz. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The proponent of a stay bears the burden of establishing its need. *See id*. at 708; *see also Mirra v. Jordan*, 15CV4100ATKNF, 2016 WL 889559, at *1 (S.D.N.Y. Mar. 1, 2016). "Mere compliance with a discovery schedule or expenditure of resources for typical discovery is not a hardship which would justify a stay of proceedings." *Dohse v. Potter*, 8:04CV355, 2006 WL 1314327, at *3 (D. Neb. May 11, 2006). "More than conclusory allegations that there will be prejudice without the stay are required in order to comport with" the good cause standard necessary to justify a stay. *United States v. $151,388.00 United States Currency*, 751 F.Supp. 547, 550 (E.D.N.C.1990). Defendants contend an "arbitration decision may have preclusive effect over" some of the claims to the litigation but do not explain how any arbitration decision could even remotely apply to Plaintiff Fowler's claims. As Defendant implicitly acknowledges, Plaintiff Fowler's claims are not subject to arbitration and there is no reason to stay his claims other than delay. For these reasons, the request to stay Plaintiff's Fowler's claims should be denied.

## II. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

### A. Standing

Defendants argue that both Plaintiffs lack standing. *See* Letter at 2-3. As to Plaintiff Baz, Defendants claim that he "falls completely outside the scope of the breach and was not impacted by it at all." Defendants claim that they are prepared to submit a declaration confirming that he did not have any personal information in the Canon email box that was the subject of the incident which is why he did not receive a notice letter. *See id.* at 2.

Despite Defendants' assertion that Plaintiff Baz was not impacted by the breach, there have been situations where only after extensive forensic analysis, companies determine that the affected group is actually larger than initially expected. For example, in *Hutton v. Nat'l Bd. Of Examiners in Optometry, Inc.*, 892 F.3d 613, 623-24 (4th Cir. 2018), the Fourth Circuit reversed dismissal of an action where the defendant claimed it was not the source of the data breach and did not send out data breach notice letters. Following the Fourth Circuit's decision, the parties began discussion of potential resolution of the case, and the case settled on a class wide basis. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 2019 U.S. Dist. LEXIS 120558, *7 (D. Md. July 15, 2019).

Similar to *Hutton*, Plaintiff Baz made sufficient allegations supporting his position that he was part of this data breach. For example, Plaintiff Baz alleged that on May 2, 2020, he learned that his 2019 electronic federal tax return filing was rejected because his daughter's Social Security number, which was provided to GE for beneficiary designation purposes, was fraudulently used by an unauthorized person. Compl. (Dkt. No. 40) ¶ 19. Plaintiff Baz also alleged that on or around April 2020, he discovered fraudulent charges to his bank account, and in or around February 2020 and March 2020, he received electronic solicitations to his LinkedIn account regarding his Social Security Number and his date of birth. *Id.* ¶¶ 17, 18. Neither

Plaintiff Baz nor his daughter are aware of any other breaches where their personal or financial information was compromised within the last year and they have not received any notifications of other data breaches in the last year. *Id.* ¶¶ 17, 19. Accordingly, Plaintiff Baz's allegations are sufficient to establish that he was impacted by Defendants' conduct.

Similarly, Plaintiff Fowler meets the minimal threshold for standing. In considering whether Plaintiffs have established Article III standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (citation omitted). The Supreme Court has "found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm," even where it is not "literally certain the harms they identify will come about." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (citing cases) (emphasis added). The Complaint is replete with allegations that the unauthorized individuals who accessed the compromised data were malicious actors or identity thieves, whose motive is to monetize the treasure trove of stolen data for criminals. Plaintiff Fowler further alleges that, because of the Data Breach, he suffers from a present, immediate and imminent and continuing risk of harm, including but not limited to, the serious and immediate risk of fraud and identity theft. This is sufficient to confer standing. *See, e.g., Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963; 965–67 (7th Cir. 2016) (substantial risk of harm existed where restaurant customers' credit-card data was stolen in a data breach because a "primary incentive" for a breach is to commit fraud or identity theft.).

Nevertheless, Plaintiffs are aware of the Court's busy docket and do not want to engage in unnecessary motion practice. They are willing to consider any factual declaration that Defendants wish for Plaintiffs to consider. Accordingly, Plaintiffs request that Defendants should provide Plaintiffs with a declaration by a person with personal knowledge about the scope of the data breach before the filing of any motion to dismiss or the entry of a briefing schedule on the motion to dismiss.

### B.   Plaintiffs State Claims Upon Which Relief Can Be Granted

Finally, Plaintiffs' claims for relief – negligence (Count I), negligence per se (Count II), breach of contract (Count III), breach of implied contract (Count IV), violation of consumer protection statutes (Counts V-VI) and breach of fiduciary duty (VII) – are adequately plead at this early stage of the litigation. Federal courts across the country have consistently recognized the viability of these claims under similar circumstances. *See, e.g.*, *Buckley v. Santander Consumer USA, Inc.*, No. C17-5813 BHS, 2018 WL 1532671, at *4 (W.D. Wash. Mar. 29, 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1309 (D. Minn. 2014); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015); *In re Marriott Interntional, Inc., Customer Data Sec. Breach Litig.,* No. 19-MD-2879, 2020 WL 869241, at *7 (D. Md. Feb. 21, 2020); *Fero v. Excellus Health Plain, Inc.*, 236 F. Supp. 3d 735, 761 (W.D.N.Y. 2017); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012)*; In re Equifax, Inc., Customer Data Sec. Breach Litig.,* 362 F. Supp. 3d 1295, 1343 (N.D. Ga. 2019).

\*   \*   \*   \*   \*

      For the reasons set forth above, Defendants' request should be denied.  Instead, Plaintiffs request that to promote judicial efficiency, prior to filing a motion to compel arbitration or motion to dismiss, the Court order Defendants to produce certain discovery that may limit the scope of the case, including: (1) the arbitration agreement that Plaintiff Baz purportedly signed; (2)  a declaration stating the type of information relating to each Plaintiff that was contained within the Canon email box that was the subject of the incident.  Thank you for your attention to this matter.

Very truly yours,

Joseph I. Marchese