UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: GE/CBPS DATA BREACH LITIGATION

Case No. 1:20-cv-02903-KPF

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT

Kenneth L. Chernof, admitted *pro hac vice*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C.  20001-3743
Telephone:  (202) 942-5940
Facsimile:  (202) 942-5999
ken.chernof@arnoldporter.com

Debra E. Schreck
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689
debra.schreck@arnoldporter.com

*Attorneys for Defendants General Electric Company and Canon Business Process Services, Inc.*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

LEGAL STANDARDS ........................................................................................................ 3

I.   DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)
     FOR LACK OF SUBJECT MATTER JURISDICTION ................................................. 3

II.  DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)
     FOR FAILURE TO STATE A CLAIM .......................................................................... 4

ARGUMENT ....................................................................................................................... 4

I.   PLAINTIFF LACKS ARTICLE III STANDING BECAUSE HE FAILS TO
     ALLEGE A COGNIZABLE INJURY-IN-FACT ........................................................... 4

II.  PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
     GRANTED ...................................................................................................................... 13

     A.   Plaintiff's Negligence and Negligence Per Se Claims Fail (Counts I & II) ......... 13

     B.   Plaintiff's Contract Claims Fail (Counts III & IV) .............................................. 16

     C.   Plaintiff's New York General Business Law § 349 Claim Fails (Count VI) ....... 20

     D.   Plaintiff's Breach of Fiduciary Duty Claim Fails (Count VII) ............................ 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
    499 F.2d 232 (2d Cir. 1974) ....................................................................................... 15

*Antman v. Uber Techs., Inc.*,
    No. 3:15-CV-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) .............................. 9

*Aquinas v. Fed. Exp. Corp.*,
    940 F. Supp. 73 (S.D.N.Y. 1996) ................................................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 4

*Azzolini v. Marriott Int'l, Inc.*,
    417 F. Supp. 2d 243 (S.D.N.Y. 2005) ............................................................................ 18

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ......................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 4

*Brault v. Soc. Sec. Admin., Comm'r*,
    683 F.3d 443 (2d Cir. 2012) ............................................................................................ 5

*Bulger v. Royal Doulton, PLC*,
    No. 05 CIV. 7709 (DAB), 2006 WL 3771016 (S.D.N.Y. Dec. 19, 2006) .......................... 20

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) ............................................................................................... 2

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d. Cir. 2002) ......................................................................................... 17

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009) ................................................................. 5, 10, 25

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................................*passim*

*Dubai Islamic Bank v. Citibank, N.A.*,
    126 F. Supp. 2d 659 (S.D.N.Y. 2000) ............................................................................ 15

*Ezagui v. Dow Chem. Corp.*,
    598 F.2d 727 (2d Cir. 1979) ......................................................................................... 15

*F.T.C. v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972).................................................................................... 15

*Fero v. Excellus Health Plan, Inc.*,
    236 F. Supp. 3d 735 (W.D.N.Y. 2017)..................................................6, 10, 11

*Fero v. Excellus Health Plan, Inc.*,
    304 F. Supp. 3d 333 (W.D.N.Y. 2018)..................................................... 5

*Flickinger v. Harold C. Brown & Co.*,
    947 F.2d 595 (2d Cir. 1991) ...................................................................... 24

*Forgione v. Gaglio*,
    No. 13 CIV. 9061 KPF, 2015 WL 718270 (S.D.N.Y. Feb. 13, 2015) ............................22, 23

*Gain v. E. Reinforcing Serv., Inc.*,
    603 N.Y.S.2d 189 (N.Y. App. Div. 1993) ......................................................... 15

*Garcia v. Lewis*,
    No. 05 CIV. 1153 (SAS), 2005 WL 1423253 (S.D.N.Y. June 16, 2005).............................. 2

*Germano v. Cornell Univ.*,
    No. 03 CIV. 9766 (DAB), 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005) .......................... 19

*Gilot v. Equivity*,
    No. 18-CV-3492 (WFK), 2018 WL 3653150 (E.D.N.Y. July 31, 2018) ............................. 6

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314, 774 N.E.2d 1190 (2002).................................................................21, 22

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)...............*passim*

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996) ...................................................................... 16

*Hudson & Broad, Inc. v. J.C. Penney Corp.*,
    No. 12 CIV. 3239 KBF, 2013 WL 3203742 (S.D.N.Y. June 18, 2013), *aff'd*,
    553 F. App'x 37 (2d Cir. 2014) .................................................................18, 19

*In re SuperValu, Inc.*,
    870 F.3d 763 (8th Cir. 2017) .................................................................... 11

*In re Zappos.com, Inc.*,
    108 F. Supp. 3d 949 (D. Nev. 2015) .............................................................. 12

*Irvine v. Kate Spade & Co.*,
    No. 16-CV-7300 (JMF), 2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) ............................ 23

*Jablonski v. Special Counsel, Inc.*,
No. 1:16-CV-5243 (ALC), 2017 WL 4342120 (S.D.N.Y. Sept. 28, 2017) .......................... 23

*Jantzer v. Elizabethtown Cmty. Hosp.*,
No.8:19-cv-00791, 2020 WL 2404764 (N.D.N.Y. May 12, 2020) ............................... *passim*

*Jones v. Gen. Elec. Co.*,
No. 18-CV-07086-EMC, 2019 WL 1599183 (N.D. Cal. Apr. 15, 2019) ................. 18, 19, 20

*Joseph Martin, Jr., Delicatessen v. Schumacher*,
52 N.Y.2d 105 (1981) ............................................................................................ 16

*Judd Burstein, P.C. v. Long*,
No. 15 CIV. 5295 (KPF), 2018 WL 6067226 (S.D.N.Y. Nov. 20, 2018), *aff'd*,
797 F. App'x 585 (2d Cir. 2019) ........................................................................... 25

*Kamdem-Ouaffo v. Balchem Corp.*,
No. 17-CV-2810 (KMK), 2018 WL 4386092 (S.D.N.Y. Sept. 14, 2018) ..................... 24

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x 5 (2d Cir. 2012) ......................................................................... 21, 22

*Kenford Co., Inc. v. Erie Cnty.*,
67 N.Y.2d 257 (1986) ............................................................................................ 17

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. 2010) ......................................................................... 13

*Longenecker-Wells v. Benecard Services, Inc.*,
658 Fed. App'x. 659 (3d Cir. 2016) ...................................................................... 20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................................................ 3

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .................................................................................... 3

*Mayfield v. Gen. Elec. Capital Corp.*,
No. 97 CIV. 2786 (DAB), 1999 WL 182586 (S.D.N.Y. Mar. 31, 1999) ................. 21, 22

*McLoughlin v. People's U. Bank, Inc.*,
No. 3:08-cv-00944 (VLB), 2009 WL 2843269 (D. Conn. Aug. 31, 2009) ................... 25

*Negrete v. Citibank, N.A.*,
15-Civ-7250, 2016 WL 3002421 (S.D.N.Y. May 19, 2016) ..................................... 16

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ............................................................................................... 10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  647 N.E.2d 741 (1995)..............................................................................................22, 23

*PB Americas Inc. v. Cont'l Cas. Co.*,
  690 F. Supp. 2d 242 (S.D.N.Y. 2010) .............................................................. 22

*Pena v. British Airways, PLC (UK)*,
  No. 18-cv-6278 (LDH) (RML), 2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020)...............6, 18

*Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*,
  No. 08-cv-3604 (BSJ), 2009 WL 1119409 (S.D.N.Y. Apr. 26, 2009)..........................21, 22

*Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*,
  760 F. Supp. 2d 384 (S.D.N.Y. 2011) ............................................................. 16

*Rahman v. Marriott Int'l, Inc.*,
  No. 8:20-cv-00654-DOC-KES, slip op. (C.D. Cal. Jan. 12, 2021)....................... 9

*Rather v. CBS Corp.*,
  886 N.Y.S.2d 121 (N.Y. App. Div. 2009) ...................................................... 24

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015) ......................................................................... 11

*Ricatto v. M3 Innovations Unlimited, Inc.*,
  No. 18 CIV. 8404 (KPF), 2019 WL 6681558 (S.D.N.Y. Dec. 6, 2019) ............. 16

*Robert S. Nusinov, Inc. v. Principal Mut. Life Ins. Co.*,
  80 F. Supp. 2d 101 (W.D.N.Y. 2000)............................................................. 19

*Rockaway Beverage, Inc. v. Wells Fargo & Co.*,
  378 F. Supp. 3d 150 (E.D.N.Y. 2019) ........................................................... 14

*Ross v. Bank of Am., N.A. (USA)*,
  524 F. 3d 217 (2d Cir. 2008) ......................................................................... 14

*Rudolph v. Hudson's Bay Co.*,
  No. 18-cv-8472, 2019 WL 2023713 (S.D.N.Y. May 7, 2019).....................................*passim*

*Shafran v. Harley-Davidson, Inc.*,
  No. 07 CIV. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .....................11, 25

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)................................................................................................3, 4, 10

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
  No. 62076/2019, 2020 WL 5417121 (N.Y. Sup. Ct. Sept. 4, 2020).................... 16

*Steven v. Carlos Lopez & Assoc., LLC*,
    422 F. Supp. 3d 801 (S.D.N.Y. 2019) ...................................................................... 5, 7, 11

*Stutman v. Chem. Bank*,
    731 N.E.2d 608 (2000) ......................................................................................... 23

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................................... 3, 7, 8

*Timperio v. Bronx-Lebanon Hosp. Ctr.*,
    384 F. Supp. 3d 425 (S.D.N.Y. 2019) .......................................................................... 15

*U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*,
    No. 14 CIV 4138 (KPF), 2015 WL 4388421 (S.D.N.Y. July 17, 2015) ............................... 4

*U1IT4less, Inc. v. FedEx Corp.*,
    896 F. Supp. 2d 275 (S.D.N.Y. 2012), *aff'd*, 871 F.3d 199 (2d Cir. 2017) .......................... 23

*United States v. Opinca*,
    No. 10 CR 1287-01 RWS, 2011 WL 204901 (S.D.N.Y. Jan. 21, 2011) ............................... 2

*Whalen v. Michael Stores Inc.*,
    153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd sub nom. Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017) ...................................................... 13

*Whalen v. Michaels Stores, Inc.*,
    689 F. App'x 89 (2d Cir. 2017) .........................................................................*passim*

*Whitehurst v. 230 Fifth, Inc.*,
    998 F. Supp. 2d 233 (S.D.N.Y. 2014) ....................................................................... 18

*Willey v. J.P. Morgan Chase, N.A.*,
    No. 09 Civ 1397(CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009) .............................. 15, 17

*Wilson v. Ledger*,
    97 A.D.3d 1028 (N.Y. App. Div. 2012) ...................................................................... 16

*Wilson v. Nw. Mut. Ins. Co.*,
    625 F.3d 54 (2d Cir. 2010) ................................................................................. 22

*Wright v. Publishers Clearing House, Inc.*,
    439 F. Supp. 3d 102 (E.D.N.Y. 2020) .................................................................... 21, 22

*Zubair v. Bank of Am.*,
    No. 20-CV-1308 (LLS), 2020 WL 4431571 (S.D.N.Y. July 29, 2020) .......................... 15, 16

## Constitutional Provisions

United States Constitution Article III................................................................*passim*

**Statutes and Rules**

FTC Act, 15 U.S.C. § 45............................................................................15, 16, 22

N.Y. Gen. Bus. L. § 349 ......................................................................*passim*

Fed. R. Civ. P.
    12(b)(1)................................................................................2, 3, 4, 14
    12(b)(6)............................................................................................*passim*

**Other Authorities**

Givens, Practice Commentary to N.Y. Gen. Bus. L. § 349 (McKinney's) Book 19.................. 23

Defendants General Electric Company ("GE") and Canon Business Process Services, Inc. ("Canon") respectfully submit this memorandum of law in support of their motion to dismiss the consolidated class action complaint (the "Complaint") pursuant to: (i) Federal Rule of Civil Procedure ("Rule") 12(b)(1), for lack of subject matter jurisdiction; and (ii) Rule 12(b)(6), for failure to state a claim.

## INTRODUCTION

The Complaint alleges that GE contracted with Canon to maintain benefits-related emails of current and former GE employees; that Canon was the victim of a criminal third-party phishing incident (the "Data Breach" or "Breach"); and that some of the GE employee emails maintained on Canon's system might have been compromised as a result. Plaintiff Steven Fowler is a former GE employee who, after learning of the Data Breach, filed this lawsuit seeking damages.[1] However, he does not allege that he actually suffered any impact whatsoever from the incident—much less any damages as a result. In fact, his allegations make clear that nothing at all has happened to him as a result of the Breach. There is good reason for Plaintiff's failure to allege any impact or damage: the only pieces of his information that were even potentially affected were his email address, phone number, and mailing address—the same kind of non-sensitive information that is widely available irrespective of any data breach and cannot form the basis of a cause of action. Plaintiff's claims are thus hollow and unsupported by any plausible allegation.

The absence of any allegation that Plaintiff was impacted by the Breach or that any of his sensitive information was even potentially compromised compels dismissal of the Complaint. As

---

[1] The Consolidated Class Action Complaint was filed initially by Plaintiff Fowler along with another plaintiff, Maher Baz. Following Defendants' filing of their Motion to Compel Arbitration and Stay All Proceedings (ECF 49), Baz filed a voluntary dismissal of his claims (ECF 54), leaving only Plaintiff Fowler in the action.

a threshold matter, Plaintiff's pleading failures expose his lack of Article III standing, as he does not allege any injury-in-fact that is causally related to the Data Breach. As a result, the Court lacks subject matter jurisdiction over Plaintiff's claims, and dismissal is warranted under Rule 12(b)(1). Additionally, for these and other reasons, Plaintiff has not alleged—and cannot allege—actionable claims under any of the causes of action set forth in the Complaint, each of which requires (at minimum) a showing of damages, and his Complaint must therefore also be dismissed pursuant to Rule 12(b)(6).

## STATEMENT OF FACTS

GE is an industrial company. CAC ¶ 24.[2] Canon is a "provider of business process services, document management and managed workforce services[.]" CAC ¶ 42. GE retained the services of Canon to help maintain benefits-related information of current and former GE employees. CAC ¶¶ 3, 29. As relevant to this case, certain benefits-related information sent to GE by current or former GE employees was transmitted to Canon and maintained in a dedicated email box (the "Canon Email Box"). Decl. ¶ 2.[3]

In February 2020, an unauthorized third party allegedly used a phishing[4] scheme to access the Canon Email Box. Decl. ¶ 3; CAC ¶¶ 43, 44. Upon discovery of the incident, Canon

---

[2] "CAC ¶__" refers to the paragraphs of the Complaint.

[3] "Decl." refers to the attached Declaration of James Allen. "Ex. __" refers to Exhibits attached to the Declaration. Because Defendants seek dismissal under Rule 12(b)(1), the Court may consider factual information outside the four corners of the complaint submitted in support of Defendants' motion. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). Moreover, with regard to the entirety of the motion, "while courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion." *Garcia v. Lewis*, No. 05 CIV. 1153 (SAS), 2005 WL 1423253, at *3 (S.D.N.Y. June 16, 2005) (citation omitted).

[4] "Phishing" is a term used to describe "a seemingly legitimate e-mail message . . . which is actually an e-mail message sent by computer hackers for the purpose of infecting the victim's computer" or obtaining information. *United States v. Opinca*, No. 10 CR 1287-01 RWS, 2011 WL 204901, at *2 (S.D.N.Y. Jan. 21, 2011).

2

investigated and identified the individuals whose emails were in the Canon Email Box at the time of the incident. Decl. ¶ 4. The Canon Email Box included only a solitary document with any connection to Fowler—an eFax containing a "Change of Address" form. *Id.* ¶ 6, Ex. A. That form included Fowler's name, mailing address, phone number, and email address, but no sensitive personal or financial information. *Id.* GE subsequently sent notification to the individuals identified as having emails in the Canon Email Box at the time of the incident. CAC ¶ 21. Notified individuals, including Fowler, were offered free identity theft protection for two years at no personal cost. CAC ¶ 66.

## LEGAL STANDARDS

### I.   DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction over his claims. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Subject matter jurisdiction exists only when there is a case or controversy, and a case or controversy does not exist unless the named plaintiff can demonstrate that he has standing to sue under Article III of the United States Constitution. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). In a putative class action, the "named plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20

(1976) (citation and quotation marks omitted) (emphasis added).

## II. DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). Rather, it requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Twombly*, 550 U.S. at 556. Further, "the tenet that a court must accept a complaint's . . . allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*, No. 14 CIV 4138 (KPF), 2015 WL 4388421, at *2 (S.D.N.Y. July 17, 2015) (internal citations omitted).

## ARGUMENT

## I. PLAINTIFF LACKS ARTICLE III STANDING BECAUSE HE FAILS TO ALLEGE A COGNIZABLE INJURY-IN-FACT

The Complaint should be dismissed under Rule 12(b)(1) because Plaintiff lacks Article III standing. At a minimum, Article III requires Plaintiff to allege (1) an injury-in-fact that is (2) causally related to alleged wrongdoing and (3) likely to be redressed by a favorable decision. *Clapper*, 568 U.S. at 409. Plaintiff alleges no cognizable injury-in-fact: he alleges neither present injury nor the compromise of information that poses any substantial risk of injury in the future. These are not pleading errors that can be remedied by an amended complaint; Plaintiff is simply unable to make this showing.

The law in this Circuit makes clear that, to demonstrate standing, a data breach plaintiff must allege either that he personally has suffered a specific present injury from the breach or that

he faces a clearly impending, imminent, or substantial risk of future injury. *See, e.g.*, *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017); *Jantzer v. Elizabethtown Cmty. Hosp.*, No. 8:19-cv-00791, 2020 WL 2404764, at *5 (N.D.N.Y. May 12, 2020); *Rudolph v. Hudson's Bay Co.*, No. 18-cv-8472, 2019 WL 2023713, at *3 (S.D.N.Y. May 7, 2019); *Fero v. Excellus Health Plan, Inc.*, 304 F. Supp. 3d 333, 345 (W.D.N.Y. 2018) ("*Fero II*"); *Steven v. Carlos Lopez & Assoc., LLC*, 422 F. Supp. 3d 801, 804 (S.D.N.Y. 2019); *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *7 (S.D.N.Y. June 25, 2010); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009).

The Complaint contains no allegation that Plaintiff suffered any actual present injury whatsoever as a result of the Breach. He alleges no identity theft, fraud, loss of money, or any other impact. This is not surprising because the only information about Plaintiff that was even in the Canon Email Box at the time of the incident was a single eFax containing only a "Change of Address" form. Decl. ¶ 6, Ex. A. The Canon Email Box contained no social security number, credit card number, driver's license number, password, or any of Plaintiff's sensitive information, and nowhere in the Complaint does he allege otherwise. Because none of his sensitive financial or other information was impacted, Plaintiff does not and cannot allege that the risk of future injury is "certainly impending," imminent, or substantially likely. *Whalen*, 689 F. App'x at 90.

The Second Circuit's decision in *Whalen* provides the framework for the Court's analysis of standing.[5] There, a plaintiff used her payment card to make purchases at a Michaels store, and her card was subsequently used fraudulently. She then sued Michaels, alleging primarily that she

---

[5] Although *Whalen*, as a summary order, is not binding precedent, it may be relied on as persuasive authority, *see Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 450 n.5 (2d Cir. 2012), and, in fact, has been repeatedly relied on in the cases cited herein.

faced a risk of future financial fraud, but the Court dismissed the case for lack of standing. First, the Court observed that she had alleged no present injury because she cancelled her card and her bank did not hold her responsible for any fraudulent charges. *Id.* The Court then held that the plaintiff could base standing on a risk of future harm only if she could allege that such injury was "certainly impending," imminent, or at least substantially likely. *Id.* (citing *Clapper*, 568 U.S. at 402). The Court noted that a "theory of standing[ ] which relies on a highly attenuated chain of possibilities[ ] does not satisfy the requirement that threatened injury must be certainly impending." *Id.* (citing *Clapper*, 568 U.S. at 410). The *Whalen* plaintiff could not meet this standard because, other than her already cancelled payment card, "no other personally identifying information—such as her birth date or Social Security number—[was] alleged to have been stolen." *Id*. Because there had been no compromise of the kind of sensitive information upon which future fraud could potentially be based, the plaintiff had not alleged a cognizable risk of such future harm and her claim was dismissed. *Id.*

District courts in the Second Circuit have consistently followed *Whalen*,[6] and the recent decision in *Jantzer* is on point. Just like here, *Jantzer* concerned a data breach in which a third party hacker allegedly gained access to the defendant's emails, which contained some patients' social security numbers or other sensitive financial or medical information. 2020 WL 2404764 at *1. The *Jantzer* plaintiff also did not allege any present harm, but instead attempted to base standing on the purported risk that the compromise of his information exposed him to the possibility of future harm. *Id.* at *2. Also like here, the defendant submitted a declaration

---

[6] *See, e.g.*, *Rudolph*, 2019 WL 2023713, at *1; *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 752, 755 (W.D.N.Y. 2017) ("*Fero I*"); *Jantzer*, 2020 WL 2404764, at *4; *Pena v. British Airways, PLC (UK)*, No. 18-cv-6278 (LDH) (RML), 2020 WL 3989055, at *2 (E.D.N.Y. Mar. 30, 2020); *Gilot v. Equivity*, No. 18-CV-3492 (WFK), 2018 WL 3653150, at *2 (E.D.N.Y. July 31, 2018).

showing that only limited and non-sensitive information relating to the named plaintiff who brought the case was even potentially impacted. *Id.* Applying the analysis in *Whalen*, the court first observed that "[a]llegations of future harm 'may suffice if the threatened injury is certainly impending,' or there is a 'substantial risk' that the harm will occur." *Id.* at \*3 (quoting *Susan B. Anthony List*, 573 U.S. at 158). The court made clear, however, that "'[a]llegations of *possible* future injury are not sufficient.'" *Id.* (quoting *Clapper*, 568 U.S. at 409). The court then held that the plaintiff faced no cognizable risk of future harm because none of his sensitive information was compromised:

> Plaintiff['s] … social security number was not included in the data that was stolen. . . . . While the data breach contained "limited information [of Plaintiff's] associated primarily with billing," such as "the date of treatment, information identifying the insurer that provided reimbursement, and payment dates and amounts," it "did not contain any financial information of [Plaintiff], such as credit or debit cards," his birth date, or any of his medical conditions . . . . Thus, the Court must determine whether the theft of Plaintiff's personal information related to the date and amount of his treatment, and his insurer, creates an imminent risk of identity theft.

> The Court finds that it does not, and thus Plaintiff has not alleged the requisite injury in fact necessary for standing. Even assuming that the Second Circuit allowed standing based on an increased risk of future identity theft, "it would be of no help to Plaintiff[ ] in this case," *Steven v. Carlos Lopez & Assocs., LLC*, 422 F. Supp. 3d 801, 804 (S.D.N.Y. 2019), because the type of information exposed is not sensitive enough such that identity theft is "certainly impending" or there is a "substantial risk" that it will occur. [*Susan B. Anthony List*], 573 U.S. at 158, 134 S. Ct. 2334 (citation omitted).

*Id.* at \*4-\*5 (alteration in original). This case is no different.

Similarly, in *Rudolph*, the plaintiff alleged that she used her debit card at Saks, that her bank thereafter notified her of suspected fraudulent activity and temporarily froze her card, but that she incurred no fraudulent charges. 2019 WL 2023713, at \*1. Around the same time, Saks disclosed that it had been the victim of a data breach involving customer payment card information. Rudolph alleged that she was "at a substantially increased risk of future fraud or

identity theft . . . and . . . ha[d] a continuing interest in protecting [her] data from misuse." *Id.* Applying the analysis in *Whalen*, the court held that the plaintiff failed to allege that she was at a substantial risk of future injury. Again, the court recognized that allegations of future injury will suffice only if "threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* at *3 (quoting *Susan B. Anthony List*, 573 U.S. at 158) (internal quotation marks omitted). But "[a] plaintiff does not demonstrate a substantial risk of harm by alleging an 'attenuated chain of inferences' that might result in injury." *Id.* (quoting *Clapper* at 568 U.S. at 414 n.5). The court noted that the only compromised information was the plaintiff's payment card information and, as that card had been cancelled, there was no stolen information that could be used to cause a cognizable injury in the future. *Id.* at *4. The court then contrasted the case to one in which a plaintiff could allege that far more sensitive information was compromised—not just address information but "social security numbers or online passwords." *Id.* at *5.

Applying these principles, Plaintiff Fowler falls far short of his burden to establish standing. As an initial matter, he does not even attempt to allege a present injury:  he does not allege identity theft, tax fraud, credit card fraud, or any misuse of his information whatsoever. Indeed, Plaintiff has identified *nothing* that has happened to him in the many months since the incident occurred. Nor does Plaintiff allege any cognizable risk of future harm. That is because he does not and cannot allege that any sensitive information relating to him was even in the Canon Email Box at the time of the incident, much less compromised. As noted above, the only information of Plaintiff's that was in the Canon Email Box at the time of the incident was a single "Change of Address" form with his basic contact information:  address, phone number, and email address. But that information is publicly available even in the absence of any data breach; it is not sensitive financially or otherwise—and is plainly not the kind of information

upon which future risk can be considered "certainly impending." *See, e.g., Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2015 WL 6123054 at *11 (N.D. Cal. Oct. 19, 2015) (finding plaintiff's allegations insufficient "because his complaint allege[d] only the theft of names and driver's licenses. Without a hack of information such as social security numbers, account numbers, or credit card numbers, there is no obvious, credible risk of identity theft that risks real, immediate injury."); *see also Rahman v. Marriott Int'l, Inc.*, No. 8:20-cv-00654-DOC-KES, slip op. at 3 (C.D. Cal. Jan. 12, 2021) ("Plaintiff has not plausibly pled here that any of their more sensitive data—such as credit card information, passports, or social security numbers—has fallen into the wrong hands. Without a breach of this type of sensitive information, Plaintiff has not suffered an injury in fact and cannot meet the constitutional requirements of standing."). If the law were otherwise, the publication of any institutional, organizational, or online directory containing individuals' phone numbers, addresses, or email addresses would be an actionable data breach.

Far short of satisfying the legal requirements of this Circuit, Plaintiff offers only conclusory assertions that he and other unnamed putative class members "now face an imminent heightened, and substantial risk of identity theft and other fraud, which is a concrete and particularized injury traceable to Defendants' conduct," CAC ¶ 68, and that "victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identify theft." CAC ¶ 66. But nowhere in the Complaint's 183 paragraphs does Plaintiff allege that he has suffered these (or any other) harms or that his sensitive information was compromised.

Finally, lacking present injury or an imminent risk of future harm, Plaintiff resorts to other vague assertions of alleged injury—purportedly suffered by Plaintiff "and Class members" —presumably in an attempt to establish standing. *See, e.g.*, CAC ¶ 79, *see also* CAC ¶¶ 104, 112,

119, 125, 145, 182.[7] But each fails to establish standing, as explained below:

First, Plaintiff cannot establish standing based on allegations of hypothetical injuries that might have been suffered by other unnamed putative class members. *See Simon*, 426 U.S. at 40 n.20; *Jantzer*, 2020 WL 2404764, at *4 (requiring that plaintiff show that *his own* sensitive information was implicated to demonstrate standing, notwithstanding allegations of injury suffered by other putative class members). In determining standing in the class action context, "the Court considers the injuries of the named plaintiffs, not unnamed class members." *Fero I*, 236 F. Supp. 3d at 746. "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)) (alteration in original).

Second, Plaintiff contends that he has suffered "injury and damages" in the form of "the time and expense necessary to mitigate, remediate, and sort out the increased risk of identity theft." CAC ¶ 79; *see also* CAC ¶¶ 104, 112, 119, 125, 182. But such speculative "mitigation expenses" are not cognizable where, as here, a plaintiff alleges neither present harm nor imminent future harm: "Courts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identify theft is not, in itself, an injury the law is prepared to remedy." *Cherny*, 604 F. Supp. 2d at 609 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). Where plaintiff has "failed to show an actual resulting injury that might support a claim for damages[,]" there can be no recovery based on purported monitoring

---

[7] Alleging that Plaintiff and putative class members "have suffered injury and damages, including the increased risk of identity theft and identity fraud, improper disclosure of PFI, the time and expense necessary to mitigate, remediate, and sort out the increased risk of identity theft and the inability to use debit cards because those cards were canceled, suspended, or otherwise rendered unusable as a result of the data breach, and/or false or fraudulent charges stemming from the data breaches." CAC ¶ 79.

or mitigation, which is "solely the result of a perceived and speculative risk of future injury that may never occur." *Shafran v. Harley-Davidson, Inc.*, No. 07 CIV. 01365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008); *see also id.* at *2 n.2 (collecting cases). A plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Accordingly, "[m]itigation expenses do not qualify as actual injuries where the harm is not imminent," *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015), and thus "the time and expense necessary to mitigate, remediate, and sort out the increased risk of identity theft," CAC ¶ 79, are insufficient to confer standing. *See Beck v. McDonald*, 848 F.3d 262, 269-70 (4th Cir. 2017).[8] *Jantzer* speaks to this very issue:

> Defendants contend that "[p]laintiffs are not permitted to use unspecified monitoring to manufacture an injury" because "'[m]itigation expenses do not qualify as actual injuries where the harm is not imminent.'" (Dkt. No. 17–18 (quoting *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015)).
>
> The Court agrees with Defendants. "In *Clapper*, the Supreme Court held that plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" [*Fero I*, 236 F. Supp. 3d at 746] (quoting *Clapper*, 568 U.S. at 416, 133 S. Ct. 1138). *See, e.g.*, *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) ("Because plaintiffs have not alleged a substantial risk of future identity theft, the

---

[8] To the extent Plaintiff is claiming that he has incurred damages for past mitigation efforts, he offers only highly generalized allegations that "Plaintiffs and Class members" will have to devote "time and expense" to "sort out the increased risk of identity theft and the inability to use debit cards." CAC ¶ 79. In addition to the reasons discussed above, such vague allegations have been consistently rejected as inadequate. *See, e.g.*, *Whalen*, 689 F. App'x at 91 (rejecting claim where plaintiff "pleaded no specifics about any time or effort that she herself has spent monitoring her credit"); *Jantzer*, 2020 WL 2404764 at *6 (plaintiff's general allegation that "'he has spent time monitoring and protecting his financial well-being, by, among other things, corresponding with the major credit bureaus,'" found insufficient to confer standing); *compare Steven*, 422 F. Supp. 3d at 807 (no allegations of money spent in wake of data breach), *with Rudolph*, 2019 WL 2023713, at *1, *7 (specific allegations relating to "identifiable" and "out-of-pocket expense[s]" "already-incurred" as a result of the breach).

time they spent protecting themselves against this speculative threat cannot create an injury.")

2020 WL 2404764 at *5-*6. Indeed, here, where the only information even potentially accessed was Plaintiff's mailing address, email address, and phone number, there can be no plausible claim of damages based on mitigation or monitoring.

Third, Plaintiff also vaguely alleges harms arising out of "improper disclosure of PFI [personal financial information]." CAC ¶ 79; *see also* CAC ¶¶ 104, 119, 125, 145, 182. But, here, absolutely no personal financial information relating to Fowler was even at issue. Further, as with its other vague claims of injury, the Complaint fails to pair this broad assertion with any allegations as to how the alleged improper disclosure by itself has caused injury. Without such allegations, Plaintiff cannot demonstrate any injury-in-fact. *See, e.g.*, *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) ("Even if Plaintiffs adequately allege a loss of privacy, they have failed to show how that loss amounts to a concrete and particularized injury.").

Finally, Plaintiff alleges as injury "the inability to use debit cards because those cards were canceled, suspended, or otherwise rendered unusable as a result of the data breach, and/or false or fraudulent charges stemming from the data breaches." CAC ¶ 79; *see also* CAC ¶ 112. But Plaintiff, once again, does not allege that this harm actually happened to him, *i.e.*, he never alleges that he *personally* was unable to use a debit card, that his card was canceled, suspended or otherwise rendered unusable, or that he incurred any unauthorized charges. Nor could he make that allegation, given that he does not allege that any of his payment or financial information was impacted, and, indeed, only his address, email address, and phone number were even *potentially* impacted. Decl. ¶ 6, Ex. A. On that basis alone, Plaintiff's claim of injury fails. But even if Plaintiff had alleged that his payment or financial information was compromised, the Second Circuit in *Whalen* rejected standing based on that type of alleged injury. There, the plaintiff

12

alleged that her credit card information had been stolen, two attempts to use it followed, and she had lost time and money in resolving the attempted fraudulent charges and monitoring her credit information. 689 Fed. App'x at 90-91. The Court found those allegations insufficient to establish injury-in-fact, in part because, "given the zero-fraud-liability policy of every major card issuer in the country," individuals are rarely, if ever, responsible for fraudulent charges, and such charges, therefore, cannot confer standing. *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 580-81 (E.D.N.Y. 2015), *aff'd sub nom. Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017); *see also Rudolph*, 2019 WL 2023713, at *1 (finding no standing where plaintiff asserted injury based on "expenditure of time in dealing with the breach and obtaining a new debit card"); *Hammond*, 2010 WL 2643307, at *8 (finding that fraudulent but refunded credit card charges did not constitute injury for purposes of standing).

Plaintiff has failed to allege any cognizable injury. Accordingly, he lacks Article III standing and the Court should dismiss the Complaint in its entirety.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if Plaintiff could establish standing, the Court should dismiss the Complaint for the independent reason that his allegations fail to state a viable claim for relief. Courts routinely dismiss cases on Rule 12(b)(6) grounds even if standing is found. *See, e.g., Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010); *Rudolph*, 2019 WL 2023713, at *1-*2.

### A.    Plaintiff's Negligence and Negligence Per Se Claims Fail (Counts I & II)

Plaintiff's two negligence-based claims are insufficient as a matter of law because he has failed to allege any cognizable damages.[9] Plaintiff's negligence per se claim fails for the

---

[9] Plaintiff fails to identify the state under whose law he is asserting his common law claims. Defendants assume that Plaintiff is bringing his claims under New York law, as this is consistent with the Complaint's allegations regarding venue. *See* CAC ¶ 14.

additional reason that the Federal Trade Commission ("FTC") Act, upon which his claim is based, does not provide for a private right of action.

Under New York law, the essential elements of a negligence claim are: "(a) the existence of a legal duty to the plaintiff; (b) a breach of that duty; (c) proximate causation; and (d) damages." *Rockaway Beverage, Inc. v. Wells Fargo & Co.*, 378 F. Supp. 3d 150, 164 (E.D.N.Y. 2019) (citations and quotation omitted). Plaintiff has not alleged "damages" sufficient to state a negligence claim. A court's examination of "damages" for purposes of state law claims is a separate inquiry from the "injury-in-fact" analysis for Article III standing; indeed, the pleading requirement for damages is higher under Rule 12(b)(6) than under Rule 12(b)(1). *See Ross v. Bank of Am., N.A. (USA)*, 524 F. 3d 217, 222 (2d Cir. 2008) (an injury-in-fact "need not be capable of sustaining a valid cause of action." (citation and quotation mark omitted)). To be sure, Plaintiff alleges a litany of general and hypothetical harms, including "ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse"; "loss of the confidentiality of the stolen confidential data"; "expenses and/or time" spent on various forms of monitoring, including credit monitoring and identity theft insurance and "scrutinizing" bank and credit card statements, credit reports, and fraud alerts; and even "the illegal sale of the compromised data on the dark web" and "decreased credit scores and ratings." CAC ¶¶ 104, 112. But these speculative harms are insufficient to plead a negligence claim.

Despite alleging general and hypothetical harms, nowhere does Plaintiff allege that he *personally* experienced any identity theft; he merely suggests the possibility that he *may* someday be a victim, and asserts in conclusory fashion that he "and Class members" have undertaken various forms of monitoring actions in anticipation of such hypothetical possibility. Courts have dismissed negligence claims alleging such anticipatory damages. *See, e.g.*, *Hammond*, 2010 WL

14

2643307, at *10 (S.D.N.Y June 25, 2010) (dismissing negligence claim where plaintiffs' "principal complaint" was that "they have a heightened fear of having their identities stolen in the future and have, as a result, taken steps to monitor their credit more vigilantly"); *Willey v. J.P. Morgan Chase, N.A.*, No. 09 Civ. 1397(CM), 2009 WL 1938987, at *10 (S.D.N.Y. July 7, 2009) (dismissing data breach complaint where "claims for expenses related to credit monitoring, anxiety, emotional distress, and loss of privacy all arise due to the probability that his data might have been misused"). Plaintiff's negligence claim must therefore be dismissed.

Plaintiff's negligence per se claim fares no better and must be dismissed for two reasons. First, actual damages are an essential element of a negligence per se claim, as they are of a negligence claim, *Ezagui v. Dow Chem. Corp.*, 598 F.2d 727, 733 (2d Cir. 1979), and, as explained above, Plaintiff has not pled and cannot plead actual damages. In addition, Plaintiff's negligence per se claim fails because it is premised on an alleged violation of Section 5 of the FTC Act.  But Section 5 of the FTC Act does not confer a private right of action, and New York courts decline to recognize negligence per se claims where no private right of action exists in the statute on which the claim is based. *See, e.g.*, *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000); *Gain v. E. Reinforcing Serv., Inc.*, 603 N.Y.S.2d 189, 191 (N.Y. App. Div. 1993).[10] "[T]he provisions of the Federal Trade Commission Act may be enforced only by the Federal Trade Commission." *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974); *see also Zubair v. Bank of Am.*, No. 20-CV-1308 (LLS), 2020 WL

---

[10] In addition, Plaintiff does not fall within the class of persons Section 5 was intended to protect. The FTC Act charged the FTC with protecting consumers and competitors. *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972). "[T]he mere [v]iolation of a statute . . . does not automatically constitute negligence per se. Only statutes designed to protect a definite class of persons from a particular hazard, which persons within the class are incapable of avoiding, can give rise to negligence per se for violation of the statute." *Timperio v. Bronx-Lebanon Hosp. Ctr.*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (citation and quotation omitted).

4431571, at *3 (S.D.N.Y. July 29, 2020) ("Nor does the FTCA provide a private cause of action
. . . ."); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, No. 62076/2019, 2020 WL
5417121, at *6 (N.Y. Sup. Ct. Sept. 4, 2020) ("Plaintiff's negligence per se claim based on an
alleged violation of the FTC Act must also be dismissed because [i]f mere proof of a violation
. . . were to establish negligence per se, plaintiff would effectively be afforded a private right of
action that [the statute] does not recognize[.]" (citations omitted) (alteration in original)).

### B.      Plaintiff's Contract Claims Fail (Counts III & IV)

Under New York law, the essential elements of a claim for breach of contract are: "[i] the
existence of an agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach
of contract by the defendant, and [iv] damages.'" *Ricatto v. M3 Innovations Unlimited, Inc.*, No.
18 CIV. 8404 (KPF), 2019 WL 6681558, at *5 (S.D.N.Y. Dec. 6, 2019) (Failla, J.) (quoting
*Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). "Existence of a contract requires an
offer, acceptance, consideration and a mutual assent and intent to be bound." *Prince of Peace
Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) (citation
and internal quotation marks omitted). Mutual assent requires a meeting of the minds of the
parties on all essential terms of the contract. *Id*. Plaintiffs must allege in nonconclusory terms the
essential terms of the contract. *Negrete v. Citibank, N.A.*, 15-Civ-7250, 2016 WL 3002421, *12
(S.D.N.Y. May 19, 2016). "[B]efore the power of law can be invoked to enforce a promise, it
must be sufficiently certain and specific so that what was promised can be ascertained." *Joseph
Martin, Jr., Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109 (1981); *see also Wilson v. Ledger*,
97 A.D.3d 1028, 1029 (N.Y. App. Div. 2012) ("before a plaintiff may obtain redress[,]" the
alleged promise "must be sufficiently certain so that the parties' intentions are ascertainable").

Plaintiff's contract claims must be dismissed because Plaintiff fails to allege the basic
elements of (1) the existence of an enforceable agreement; and (2) damages.

As an initial matter, Plaintiff fails sufficiently to allege either of his contract claims because he does not allege actual, non-speculative damages arising from any such alleged breach of a contract. *See Kenford Co., Inc. v. Erie Cnty.*, 67 N.Y.2d 257, 261 (1986) ("[D]amages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach [of contract], not remote or the result of other intervening causes[.]"); *Willey*, 2009 WL 1938987, at *9 (dismissing breach of contract claim in data breach case where damages were inadequately alleged). Indeed, Plaintiff alleges substantially identical damages to support his breach of contract claim as he does to support his negligence claim. *See* CAC ¶¶ 104, 112, and 119. For the same reasons explained *supra* (II.A), Plaintiff's failure to plead (and the existence of no) present damages, and his assertions of only highly speculative future damages, doom his breach of contract claim.

Beyond his critical pleading failures with respect to damages, Plaintiff's contract claims are untenable for the additional reason that he fails to allege any actionable agreement with regard to his claims. As to his breach of contract claim, Plaintiff tries to characterize various GE policy documents—*i.e.*, The Spirit & the Letter,[11] GE's Employment Data Protection Standards (CAC ¶¶ 34-37, 117), and GE's Commitment to the Protection of Personal Information (CAC ¶¶ 30-32, 117) as contracts. But nowhere in the Complaint does Plaintiff support that attempt with any actual facts that plead the elements of a contract—namely, that these documents contained terms that GE offered to Plaintiff, that he accepted, that consideration was exchanged, and that

---

[11] Plaintiff cites The Spirit & the Letter in the Complaint, *see* CAC ¶ 2, n.3 (citing https://www.ge.com/in/sites/www.ge.com.in/files/TheSpirit&TheLetter.pdf), and it, therefore, should be deemed incorporated into the CAC. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d. Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (citation and quotation omitted)).

there was mutual assent and intent to be bound by an agreement to safeguard Plaintiff's

information against third party hackers. Indeed, with respect to The Spirit & the Letter, Plaintiff

characterizes the document as an "employee handbook" but fails to explain how the document

(even assuming it is an employee handbook) can credibly be construed as a valid contract. Nor

can the statements of GE's general policies and aspirations that Plaintiff selectively quotes from

the documents (*see, e.g.*, The Spirit & the Letter at 4 (stating that leaders should "[p]ersonally set

the example for integrity"); *id.* at 3 (stating that employees should "[s]tay attuned to

developments in your area or industry that might impact GE's compliance with laws and

regulations or reputation"))—be plausibly construed as contractual terms. Without allegations

plausibly pleading the existence of a contract relevant to this dispute, Plaintiff's breach of

contract claim must fail. *See, e.g.*, *Aquinas v. Fed. Exp. Corp.*, 940 F. Supp. 73, 80 (S.D.N.Y.

1996) (dismissing contract claim where plaintiff "failed to show that the employee handbook

constitutes a binding contract"); *Azzolini v. Marriott Int'l, Inc.*, 417 F. Supp. 2d 243, 247-48

(S.D.N.Y. 2005) (rejecting breach of contract claim based on employee handbook and noting

that "[r]outinely issued employee manuals should not lightly be converted into binding

employment agreements"); *Pena*, 2020 WL 3989055 at *6 (dismissing breach of contract claims

in data breach action and rejecting plaintiff's argument that defendant's "Privacy Policy"

provided a basis for its breach of contract claim); *accord Jones v. Gen. Elec. Co.*, No. 18-CV-

07086-EMC, 2019 WL 1599183, at *2 (N.D. Cal. Apr. 15, 2019).

Plaintiff's breach of implied contract claim (Count IV) fares no better. Like a claim for

breach of contract, "[r]ecovery on a theory of implied contract requires showing consideration,

mutual assent, legal capacity and legal subject matter." *Whitehurst v. 230 Fifth, Inc.*, 998 F.

Supp. 2d 233, 256 (S.D.N.Y. 2014) (Failla, J.) (citation and quotation omitted); *see also Hudson*

*& Broad, Inc. v. J.C. Penney Corp.*, No. 12 CIV. 3239 KBF, 2013 WL 3203742, at *3 (S.D.N.Y. June 18, 2013), *aff'd*, 553 F. App'x 37 (2d Cir. 2014). Where an express contract has not been pleaded, however, "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Id*. (citation and internal quotation marks omitted). Importantly, Plaintiff must allege facts that show that the "parties' conduct and the surrounding facts and circumstances show a mutual intent to contract and a meeting of the minds." *Robert S. Nusinov, Inc. v. Principal Mut. Life Ins. Co.*, 80 F. Supp. 2d 101, 107 (W.D.N.Y. 2000) (citation omitted). Thus, "when a plaintiff cannot point to sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract, it has failed to state a cause of action." *Hudson*, 2013 WL 3203742, at *3 (citations and internal quotation marks omitted).

Here, Plaintiff alleges merely that he provided his personal and financial information "[a]s a condition of [his] employment with GE" and cherry picks references from GE policy documents. CAC ¶ 122; *see also* CAC ¶¶ 27, 33, 39, 117. But nowhere in the Complaint does Plaintiff plead facts or circumstances from which one could plausibly infer mutual intent of the parties to enter into a contract that would obligate GE and/or Canon to safeguard Plaintiff's information against criminal hacking by a third party. Courts faced with similarly infirm allegations have dismissed claims for breach of implied contract. *See, e.g.*, *Germano v. Cornell Univ.*, No. 03 CIV. 9766 (DAB), 2005 WL 2030355, at *7 (S.D.N.Y. Aug. 17, 2005) (dismissing claim for breach of implied contract because the complaint's "general reference[s]" and unspecific allegations regarding defendant's conduct were "too vague to overcome a Rule 12(b)(6) motion"); *Jones v. Gen. Elec. Co.*, No. 18-CV-07086-EMC, 2019 WL 1599183, at *2

(N.D. Cal. Apr. 15, 2019) (dismissing claim against GE for breach of implied contract and noting that plaintiff had "provide[d] no information regarding whether and how 'The Spirit and the Letter' is implicitly incorporated into the[] employment agreement."); *Hammond*, 2010 WL 2643307, at \*11 (dismissing breach of implied contract claim upon finding no "assent" to be contractually bound); *Bulger v. Royal Doulton, PLC*, No. 05 CIV. 7709 (DAB), 2006 WL 3771016, at \*7 (S.D.N.Y. Dec. 19, 2006) (dismissing implied contract claim because plaintiff had not adequately pleaded conduct that indicated agreement).

Indeed, in a recent data breach case, the Third Circuit affirmed the dismissal of Plaintiffs' breach of implied contract claim under circumstances similar to those here. *See Longenecker-Wells v. Benecard Services, Inc.*, 658 Fed. App'x. 659 (3d Cir. 2016). In *Longenecker-Wells*, Plaintiffs argued that an implied contract arose when they entrusted the defendant with confidential information as a condition of their employment. But the court found that the plaintiffs had "failed to plead any facts supporting their contention that an implied contract arose between the parties other than that [the defendant] required Plaintiffs' personal information as a prerequisite to employment. This requirement alone did not create a contractual promise to safeguard that information, especially from third party hackers." *Id.* at 662. And similar to the Complaint here, the court further noted that Plaintiffs had not alleged "any company-specific documents or policies from which one could infer an implied contractual duty to protect Plaintiffs' information." *Id.* at 663. With no facts plausibly demonstrating an implied contract, Plaintiff's breach of implied contract claim must be dismissed.

### C.   Plaintiff's New York General Business Law § 349 Claim Fails (Count VI)

Plaintiff's claim under New York General Business Law ("GBL") § 349 should be dismissed for three reasons: (1) Plaintiff does not have standing to bring a GBL claim as he has not alleged a sufficient nexus to New York State; (2) Defendants' alleged conduct was not

"consumer-oriented"; and (3) Plaintiff has not alleged any actual injury under the statute.

As an initial matter, Plaintiff does not have standing to sue under GBL § 349 because he has not alleged any acts that took place in New York State. GBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," *i.e.*, New York State. The New York Court of Appeals has held that this provision "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 315, 324-25, 774 N.E.2d 1190 (2002) (affirming dismissal of GBL § 349 claim). The Court of Appeals further held that GBL § 349 "was not intended to police the out-of-state transactions of New York companies." *Id.* at 325. "[T]o qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Id*. The mere presence of a defendant in New York is insufficient to bring a claim under GBL § 349. *See, e.g.*, *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 112 (E.D.N.Y. 2020) (dismissing GBL § 349 claim where "the transactions have no locus in New York beyond the Defendants' residency"); *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, No. 08-cv-3604 (BSJ), 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) ("New York law is clear that the fact that Fidelity's principal place of business is in New York is not sufficient to render GBL § 349 applicable."); *Mayfield v. Gen. Elec. Capital Corp.*, No. 97 CIV. 2786 (DAB), 1999 WL 182586, at *10 (S.D.N.Y. Mar. 31, 1999) (dismissing GBL § 349 claims where "[p]laintiffs have failed to allege any deceptive acts or practices by Defendant that took place in New York State"). Similarly, mere allegations that a scheme to violate the statute was hatched in New York are insufficient to sustain a GBL § 349 claim. *See Goshen*, 98 N.Y.2d at 324; *see also Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) ("To the extent plaintiffs allege that Sirius formulated the scheme to charge

the fee in New York, the insufficiency of such a pleading is made clear by Goshen.").

Here, Plaintiff makes no attempt to allege that any deceptive conduct occurred in New York. Plaintiff alleges in conclusory fashion that Defendants engaged in a litany of "deceptive, unfair, and unlawful" acts and practices, including misrepresentations, material omissions, violations of the FTC Act, and a failure to give notice of the Data Breach. CAC ¶¶ 139(a)-(e). But Plaintiff does not allege any actual facts plausibly pleading that any purportedly deceptive acts or practices have any nexus to New York. In fact, Plaintiff alleges that he was a citizen of Kentucky "at all times" relevant to his claims. CAC ¶ 21. The only allegations tying this case to New York are that GE is a New York corporation (CAC ¶ 22) and that Canon has a principal place of business in New York (CAC ¶ 23). The law is clear that those allegations are insufficient to confer standing under GBL § 349. *See Wright*, 439 F. Supp. 3d at 112; *Pentair Water Treatment*, 2009 WL 1119409, at *4; *Mayfield*, 1999 WL 182586, at *10. Without any allegations of misconduct occurring in New York, Plaintiff's GBL claim must fail.

Plaintiff's GBL § 349 claim also fails because he has not alleged any "consumer-oriented" conduct. To sustain a GBL § 349 claim, a plaintiff must allege "that the defendant's conduct is 'consumer-oriented.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744-45 (1995)). "A defendant will not be held liable under § 349 where the disputed private transaction does not have ramifications for the public at large." *PB Americas Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 252 (S.D.N.Y. 2010) (citation and internal quotation marks omitted); *see also Forgione v. Gaglio*, No. 13 CIV. 9061 KPF, 2015 WL 718270, at *15 (S.D.N.Y. Feb. 13, 2015) (Failla, J.) ("Fatal to Plaintiffs' Section 349 claim is the conspicuous absence of allegations suggesting broad consumer impact."). Private disputes generally do not implicate

"consumer-oriented" activities affecting the public at large and are therefore not subject to GBL § 349. *See, e.g.*, *Forgione* 2015 WL 718270, at *15-*16. Furthermore, employment-related disputes do not implicate "consumer-oriented" conduct. *See, e.g.*, *Jablonski v. Special Counsel, Inc.*, No. 1:16-CV-5243 (ALC), 2017 WL 4342120, at *6 (S.D.N.Y. Sept. 28, 2017). Rather, courts have held that "consumer-oriented" conduct is limited to situations where a defendant has sold a plaintiff goods or services. *See, e.g.*, *U1IT4less, Inc. v. FedEx Corp.*, 896 F. Supp. 2d 275, 295 (S.D.N.Y. 2012), *aff'd*, 871 F.3d 199 (2d Cir. 2017) ("Courts have repeatedly held that a Section 349 consumer is one who purchase[s] goods and services for *personal, family or household use.*" (citation and internal quotation omitted) (alteration in original)). Here, Plaintiff has not alleged any "consumer-oriented" conduct. The Complaint makes clear that this dispute is limited to certain current and former GE employees and their beneficiaries, not the public at large. Finally, as explained above, Plaintiff has failed to allege that he purchased any "goods or services" from GE and/or Canon. Plaintiff has not, therefore, alleged any "consumer-oriented" conduct, and his GBL claim fails on that basis.

Finally, as explained above, Plaintiff fails to allege that he has suffered an actual injury. To state a claim under GBL § 349, "a plaintiff must prove 'actual' injury to recover under the statute." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (2000) (citing *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d 20 at 647 N.E.2d at 744; Givens, Practice Commentary to N.Y. Gen. Bus. L. § 349 (McKinney's) Book 19, at 565). Under New York law, "actual injury may be shown by allegations that the plaintiff paid a price premium because of the defendant's misrepresentation or by allegations that the plaintiff did not receive the product for which he bargained." *Irvine v. Kate Spade & Co.*, No. 16-CV-7300 (JMF), 2017 WL 4326538, at *3 (S.D.N.Y. Sept. 28, 2017) (citations and internal quotation marks omitted). As explained above,

Plaintiff has not alleged that he purchased or was a consumer of anything from GE and/or Canon, much less that he paid a premium price for it. Plaintiff has not, therefore, alleged an actual injury, and his GBL § 349 claim must be dismissed.

### D.   Plaintiff's Breach of Fiduciary Duty Claim Fails (Count VII)

Plaintiff's claim for breach of fiduciary duty should be dismissed because he has failed to allege: (1) a fiduciary duty; (2) a knowing breach by Defendants ; and (3) cognizable damages as a result of such breach.

Plaintiff's breach of fiduciary duty claim is doomed from the outset because he has not alleged facts demonstrating that either Defendant owed him a fiduciary duty, nor can he. "A fiduciary relationship exists under New York law when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (citation and internal quotation marks omitted) (alteration in original). With respect to Canon, Plaintiff has alleged no fiduciary relationship, only that "Defendant GE's fiduciary duty is imputed to Defendant Canon." CAC ¶ 176. With respect to GE, Plaintiff's relationship is one between an employer and employee. And under well-established New York law, "an employer does not owe a fiduciary duty to its employees simply by virtue of the employment relationship." *Kamdem-Ouaffo v. Balchem Corp.*, No. 17-CV-2810 (KMK), 2018 WL 4386092, at *18 (S.D.N.Y. Sept. 14, 2018) (citation and quotation omitted); *see also Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (N.Y. App. Div. 2009) ("The law . . . is that employment relationships do not create fiduciary relationships." (alterations in original) (collecting cases)). Plaintiff, therefore, has failed to allege facts demonstrating that Defendants owed him a fiduciary duty.

Further, Plaintiff has failed to allege that either Defendant knowingly breached an established fiduciary duty. To state a claim, a plaintiff must allege a *knowing* breach of an

24

fiduciary duty. *See, e.g.*, *Judd Burstein, P.C. v. Long*, No. 15 CIV. 5295 (KPF), 2018 WL 6067226, at *8 (S.D.N.Y. Nov. 20, 2018) (dismissing claim where plaintiff failed to allege "a *knowing* breach of fiduciary duty"), *aff'd*, 797 F. App'x 585 (2d Cir. 2019). Here, absent from the Complaint are any allegations that either Defendant knowingly breached any alleged duty and, therefore, the breach of fiduciary duty claim must be dismissed.

Finally, Plaintiff has not alleged cognizable damages resulting from any alleged breach. Plaintiff alleges conclusory claims of damages, as outlined above. The various forms of damages that Plaintiff alleges, however, are impermissibly speculative, hypothetical, or conditioned upon possible future events and cannot sustain a claim for breach of fiduciary duty. *See, e.g.*, *Shafran*, 2008 WL 763177, at *3 (dismissing breach of fiduciary duty claim and finding that "[c]ourts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy"); *Cherny*, 604 F. Supp. at 609 (dismissing breach of fiduciary claim where plaintiff "ha[d] not alleged an actual injury for which damages are appropriate"); *McLoughlin v. People's U. Bank, Inc.*, No. 3:08-cv-00944 (VLB), 2009 WL 2843269, at *8 (D. Conn. Aug. 31, 2009) (dismissing breach of fiduciary duty claim as "deficient without any allegation of actual damages" under either New York or Connecticut law). For this additional reason, Plaintiff's breach of fiduciary duty claim must be dismissed.

## CONCLUSION

Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety, and grant such other and further relief as it deems just and proper.

Dated:  January 21, 2021
        Washington, D.C.

By:   /s/ Kenneth L. Chernof

Kenneth L. Chernof, admitted *pro hac vice*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C.  20001-3743
Telephone:  (202) 942-5940
Facsimile:  (202) 942-5999
ken.chernof@arnoldporter.com

Debra E. Schreck
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689
debra.schreck@arnoldporter.com

*Attorneys for Defendants General Electric Company and Canon Business Process Services, Inc.*