# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: GE/CBPS DATA BREACH LITIGATION | Case No. 1:20-cv-02903-KPF |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated: August 15, 2022

Gary M. Klinger
**Milberg Coleman Bryson Phillips Grossman, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
Email: gklinger@milberg.com

Rosemary M. Rivas
**Gibbs Law Group LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: 510-350-9700
Email: rmr@classlawgroup.com

Joseph I. Marchese
Alec M. Leslie
**Bursor & Fisher, P.A.**
888 Seventh Avenue
New York, NY 10019
Tel: (646)-837-7150
Email: jmarchese@bursor.com
        aleslie@bursor.com

*Co-Lead Interim Class Counsel*

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

      A.     Factual Background ....................................................................... 2

      B.     Procedural Background .................................................................. 4

ARGUMENT ........................................................................................................ 5

II.     THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT ................................................................... 5

      A.     The Terms of the Settlement Are Substantively Fair, Adequate, and Reasonable ............................................................ 5

            1.     Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1) ..................................... 6

            2.     The Reaction of the Class (*Grinnell* Factor 2) ............................. 8

            3.     The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor 3) ........................ 8

            4.     Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) .................................. 9

            5.     The Risks of Maintaining a Class Through Trial (*Grinnell* Factor 6) ................................................... 9

            6.     Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) ................................... 10

            7.     The Reasonableness of the Settlement in Light of the Possible Recovery and the Attendant Risk of Litigation (*Grinnell* Factors 8 And 9) ................ 10

      B.     The Remainder of the Rule 23(e)(2) Factors Support Preliminary Approval ............................................................... 12

            1.     The Allocation Plan is Fair and Adequate ................................. 12

            2.     The Proposed Form and Method of Providing Notice to the Proposed Settlement Class are Appropriate ................ 12

            3.     Attorneys' Fees and Expenses ..................................................... 13

            4.     The Parties Have No Additional Agreements ............................. 13

            5.     Proposed Settlement Class Members are Treated Equitably .................... 13

III.    PROVISIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE ............................................... 14

A.      The Proposed Settlement Class Meets the Requirements of Rule
        23(a) ................................................................................................ 16

        1.      Numerosity ...........................................................................16

        2.      Common Questions of Law and Fact .....................................16

        3.      Typicality .............................................................................17

        4.      Adequacy ..............................................................................18

B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ..................... 19

        1.      Common Issues Predominate Over Any Individual Ones ........................20

        2.      A Class Action is a Superior Mechanism ..................................20

IV.     THE COURT SHOULD PRELIMINARILY APPOINT NAMED
        PLAINTIFF AS SETTLEMENT CLASS REPRESENTATIVE ..................................... 21

V.      THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ..................... 22

CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ...................................................................................... 14, 19, 20, 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
    222 F.3d 52 (2d Cir. 2000) ...................................................................................... 21

*Brown v. Title Ticor Ins. Co.,*
    982 F.2d 386 (9th Cir. 1992) ................................................................................. 19

*City of Detroit v. Grinnell Corp.,*
    495 F.2d  (2d Cir. 1974) ................................................................................. passim

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995) ................................................................................. 16

*County of Suffolk v. Long Island Lighting Co.,*
    710 F. Supp. 1422 (E.D.N.Y. 1989) ....................................................................... 15

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ................................................................................. 18

*Dziennik v. Sealift, Inc.,*
    2007 WL 1580080 (E.D.N.Y. May 29, 2007) ....................................................... 18

*Ebin v. Kangadis Food Inc.,*
    297 F.R.D. 561 (S.D.N.Y. 2014) ...................................................................... 17, 19

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,*
    301 F.R.D. 116 (S.D.N.Y. 2014) ........................................................................ 16

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. Apr. 29, 2005) .................................................... passim

*Gilliam v. Addicts Rehab. Ctr. Fund,*
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ....................................................... 11

*Green v. Wolf Corp.,*
    406 F.2d 291 (2d Cir. 1968) ................................................................................. 20

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................................ 14, 21

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................ 8

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................... 6, 8, 9, 10

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................................ 14, 15

*In re Merrill Lynch & Coj., Inc. Research Reports Sec. Litig.*,
  2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................................................ 12

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................................... 12

*In re Prudential Insur. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) ............................................................................ 20

*In re Telik, Inc. Secs. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................... 12

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d. Cir. 2001) ................................................................................ 21

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ................................................................................. 12

*Lenahan v. Sears, Roebuck & Co.*,
  2006 WL 2085282 (D.N.J. July 10, 2006) ............................................................ 15

*Marisol A. v. Guiliani*,
  126 F.3d 372 (2d. Cir. 1997) ................................................................................ 17

*Martens v. Smith Barney Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) .......................................................................... 18

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) .......................................................................... 20

*Milonas v. Williams*,
  691 F.2d 931 (10th Cir. 1982) .............................................................................. 17

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ................................................................................. 10

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................. 20

*Robidoux v. Celani,*
   987 F.2d 931 (2d. Cir. 1993) ........................................................................ 17

*Rossini v. Ogilvy & Mather, Inc.,*
   798 F.2d 590 (2d Cir. 1986) ........................................................................ 19

*TBK Partners, Ltd. v. Western Union Corp.,*
   517 F. Supp. 380 (S.D.N.Y. 1981) ................................................................ 6

*Teachers' Ret. Sys. Of Louisiana v. A.C.L.N. Ltd.,*
   2004 WL 2997957 (S.D.N.Y. May 14, 2004) .............................................. 11

*Thompson v. Metro. Life Ins. Co.,*
   216 F.R.D. 55 (S.D.N.Y. 2003) .................................................................... 6

*Torres v. Gristede's Oper. Corp.,*
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) .............................................. 8

*Toure v. Cent. Parking Sys.,*
   2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ............................................ 18

*Trinidad v. Breakaway Courier Sys., Inc.,*
   2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ................................................ 17

*Wagner v. NutraSweet Co.,*
   95 F.3d 527 (7th Cir. 1996) ........................................................................ 17

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ............................................................................ 16, 20

*Zivkovic v. Laura Christy LLC,*
   329 F.R.D. 61 (S.D.N.Y. 2018) .................................................................. 16

## STATUTES

New York General Business Law ("GBL") § 349.................................................... 4, 5

## RULES

Fed. R. Civ. P. 23 .......................................................................................... passim

Fed. R. Civ. P. 41(a)(1)(A)(i) ............................................................................ 4

## OTHER AUTHORITIES

Newberg on Class Actions ................................................................................ 14

**INTRODUCTION**

In this putative class action lawsuit, Plaintiff alleges that Defendants were subject to a data breach perpetrated by an unauthorized third party due to its failure to properly safeguard the confidential information of its employees and their beneficiaries.  Plaintiff alleges the data breach exposed financial information (*e.g.,* bank account information, such as bank routing numbers and checking account numbers) and personal information (*e.g.,* Social Security Numbers, passport numbers, and driver's license numbers).

Since Defendants' motion to dismiss was denied in part and granted in part, the Parties have been involved in extensive settlement discussions and disclosures.  After an unsuccessful mediation in December 2021 with experienced mediator Bennett G. Picker, the Parties continued to negotiate at arms' length and ultimately agreed upon a settlement that is fair and reasonable, and it delivers immediate and impactful relief to class members.  This settlement is fair and reasonable to the class in light of the potential risks to recovery including, but not limited to, Defendants' argument that a significant portion of the class is subject to mandatory non-class arbitration as a condition of employment, which arguably would bar any recovery whatsoever absent this settlement.  As outlined in the Settlement, class members are entitled to reimbursement of out-of-pocket costs or expenditures actually incurred that are fairly traceable to the data breach up to $3,500 per person.  Class members may also submit a claim for reimbursement for up to four (4) hours of lost time remedying issues fairly traceable to the data breach at $18 per hour.  Defendants have agreed to pay valid claims for out-of-pocket expenses and lost time for all Settlement class members up to a total of, and not to exceed, $350,000.00, in the aggregate.  In addition, all Settlement class members are eligible to receive eighteen (18) months of Credit Monitoring Protections provided by Aura's Financial Shield Services.

Importantly, Class members need not submit a claim to receive this Settlement benefit; all Settlement class members are automatically eligible to receive it through a link on the postcard notice they receive.

In sum, and as discussed below, this Settlement is fair, reasonable, and adequate and otherwise satisfies the requirements of Rule 23(a) and (b)(3) and the factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 488 (2d Cir. 1974).  The Court should have no hesitation finding that the Settlement falls within the range of possible approval.  Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Milberg Coleman Bryson Phillips Grossman, PLLC, Gibbs Law Group LLP, and Bursor & Fisher, P.A. as Class Counsel; (4) appoint Steven Fowler as Class Representative for the Settlement Class Members; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibits C and E to the Settlement Agreement, and direct distribution of the Proposed Notice.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

General Electric Company ("GE") contracts with Canon Business Process Services, Inc. ("Canon" and collectively with GE, "Defendants") to process certain benefits-related information of current and former GE employees and their beneficiaries.  Consolidated Class Action Complaint ("CCAC") (ECF No. 38) ¶ 41.  In the ordinary course of employment with GE, benefits-related information of certain GE employees was sent to a dedicated Canon email box (the "Canon Email Box").  In February of 2020, cybercriminals used a phishing scheme to gain access to the Canon Email Box (the "Data Incident").  *Id.* ¶ 4.  Upon discovery of the Data

Incident, Canon investigated and identified the individuals whose information was contained in the Canon Email Box at the time of the Data Incident.

GE subsequently sent notification letters to the approximately 10,300 individuals whose information was in the Canon Email Box at the time of the Data Incident (*id.* ¶ 4) and also notified the relevant state authorities.  GE's notification stated that the type of information in the Canon Email Box, which was contained in documents such as direct deposit forms, driver's licenses, passports, birth certificates, marriage certificates, death certificates, medical child support orders, tax withholding forms, beneficiary designation forms and applications for benefits such as retirement, severance and death benefits and related forms and documents, may have included names, addresses, Social Security numbers, driver's license numbers, bank account numbers, passport numbers, dates of birth, and other information (collectively, "Personal Financial Information" or "PFI").  *Id.* ¶ 1.  Notified individuals were offered free identity monitoring theft protection for two years at no personal cost.  *Id.* ¶ 66.

Plaintiff alleges that the Defendants failed to take reasonable steps to adequately protect the PFI of current and former GE employees and their beneficiaries.  *Id.* ¶ 7.  Plaintiff further alleges the Data Incident  was a direct result of Defendants' failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect PFI.  *Id.*  Accordingly, Plaintiff brought this lawsuit to recover damages and other relief resulting from the Data Incident, including but not limited to, compensatory damages, reimbursement of costs that Plaintiff and others similarly situated will be forced to bear, and declaratory judgment and injunctive relief to mitigate future harms that are certain to occur in light of the scope of this breach.  *Id.* ¶ 10.

### B.    Procedural Background

Plaintiff filed the original proposed class action complaint on April 8, 2020, *see* ECF No.

1, commencing this litigation against Canon and GE (the "Litigation").  On April 22, 2020, the

Court accepted as a related case *Baz v. General Electric Co., et al.*, Case No. 20-cv-3149,

brought by another former GE employee, Maher Baz ("Baz"), and represented by the same

counsel as Plaintiff Fowler.  ECF No. 10.  Plaintiff and Baz filed the operative Consolidated

Class Action Complaint on August 11, 2020.  ECF No. 40.  Defendants subsequently filed a

motion to dismiss Baz from this lawsuit and to compel him to engage in arbitration given that,

among other things, Defendants contended Baz had signed an employment agreement with GE

pursuant to which he agreed to resolve disputes through a binding alternative dispute resolution

procedure called the "Solutions Procedure."  That arbitration agreement and dispute resolution

procedure – which Defendants claim has become standard in GE employment agreements –

encompassed any dispute arising out of or related to current and former employees' employment,

and included a class action waiver, according to Defendants. On December 14, 2020, following

Defendants' filing of their motion to compel arbitration with respect to Baz, Baz filed a notice of

voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). ECF Nos. 53 and

54.  Plaintiff Fowler remained as the only named plaintiff and proposed class representative on

behalf of the proposed classes in the Consolidated Class Action Complaint.  The causes of action

in the Consolidated Class Action Complaint included claims for: (1) negligence; (2) negligence

*per se*; (3) breach of express contract; (4) breach of implied contract; (5) violation of the Florida

Deceptive and Unfair Trade Practices Act; (6) violation of the New York General Business Law

("GBL") § 349; and (7) breach of fiduciary duty.  ECF No. 40.

On January 21, 2021, Defendants filed a motion to dismiss the Consolidated Class Action

Complaint for, ECF No. 57, 58, as to the remaining Plaintiff, Fowler, for lack of Article III

standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) as to any of the six causes of action.  Among other things, Defendants argued that Fowler failed to allege any injury-in-fact that is causally related to the Data Incident.  Defendants also argued, along with other claim-specific defenses, that Fowler's supposed failure to allege damages required the dismissal of Fowler's negligence, contract, GBL § 349, and breach of fiduciary duty claims.  On August 4, 2021, the Court granted Defendants' motion to dismiss as to Plaintiff's claims for negligence *per se*, breach of express contract, violation of GBL § 349, and breach of fiduciary duty, but denied the motion to dismiss as to Plaintiff's claims for negligence and breach of implied contract.  ECF No. 72.

On December 20, 2021, the parties participated in a mediation before a neutral, experienced mediator, Bennett G. Picker, of Stradley Ronon Stevens & Young, LLP.  The parties were unable to reach a resolution at the mediation but continued to engage in settlement discussions thereafter, with the assistance of Mr. Picker.  Following  additional negotiation over the course of several months, including the sharing of certain information regarding security enhancements, the parties reached an agreement in principle on all material terms of the class settlement.  ECF No. 81.  This Settlement Agreement is the result of that mediation process and the Parties' effort thereafter.

## ARGUMENT

## II.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

### A.   The Terms of the Settlement Are Substantively Fair, Adequate, and Reasonable

Rule 23(e)(2) permits the approval of a class action settlement after the Court determines the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  This Settlement falls within the "range of reason" such that notice and a final hearing as to the

fairness, adequacy and reasonableness of the Settlement is warranted.  In evaluating the substantive fairness of a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463.  In finding that a settlement is fair, not every factor must weigh in favor of settlement; "rather, the court should consider the totality of these factors in light of particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).  Taken together, the *Grinnell* factors and Rule 23(e)(2) weigh heavily in favor of preliminarily approving the proposed Settlement.

1. **Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1)**

By reaching a fair and reasonable settlement prior to trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

This case is no exception.  As discussed herein, the Parties have engaged in Rule 12 motion practice and informal discovery.  *See* also Declaration of Gary M. Klinger, filed concurrently herewith ("Klinger Decl.") ¶¶ 6-7.  The next steps in the litigation would have been lifting the stay, proceeding with fact and expert discovery, and resolution by the Court of Plaintiff's forthcoming motion for class certification, as well as Defendants' forthcoming motion for summary judgment.  At minimum, those efforts would be costly and time-consuming for the

Parties and the Court, and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.  Defendants are represented by formidable defense counsel well-versed in data breach litigation, and Defendants have indicated they would continue to assert numerous defenses on the merits.  Defendants would also assert that a sizeable portion of the Settlement Class is subject to binding arbitration per their employment agreements with GE, and thus not entitled to recover anything under a settlement.   Plaintiff and Class Counsel are also aware that Defendants would oppose class certification vigorously, arguing, among other things that: (1) the circumstances for each individual putative class member (including but not limited to the arbitration issue described above and the variability among class members as to the information of theirs that was purportedly compromised and, if at all, used) are so individualized that common issues will not predominate; (2) Plaintiff Fowler lacks standing; (3) key legal questions that will vary across potential class members; and (4) the inappropriateness and mootness of any potential injunctive relief here.  Beyond class certification, Plaintiff and Class Counsel are also aware that Defendants would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware that Defendants could appeal the merits of any adverse decision, thereby further delaying any potential recovery for the Class.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class.  This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty whereas litigation does not and could result in defeat for the Class in attempting to certify a litigation class, on summary judgment, at trial or on appeal.  Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the proposed Settlement.

###### 2. The Reaction of the Class (*Grinnell* Factor 2)

Since Notice of the Settlement has not yet been issued to the Class, it is not possible to gauge the reaction of the Class at this time. However, Plaintiff is not aware of any opposition to the proposed Settlement at this time.

###### 3. The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor 3)

This factor goes to "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted).

Here, Co-Lead Interim Class Counsel are sufficiently well informed of the strengths and weaknesses of the claims, having drafted multiple pleadings and survived, in part, a motion to dismiss. Co-Lead Interim Class Counsel also spoke with potential experts concerning the strengths and weaknesses of the case, as well as the strengths and weaknesses of Defendants' arguments and potential affirmative defenses. Moreover, the information exchanged during settlement negotiations permitted Co-Lead Interim Class Counsel to learn the relevant facts and circumstances in an efficient and cost-effective manner. Defendants provided information necessary to ascertain the size of the class affected by the breach. The Parties also exchanged further information through the mediation and post-mediation negotiations, including through

various written correspondence and phone calls. As a result, Co-Lead Interim Class Counsel was well-positioned to evaluate the strengths of Plaintiff's claims, Defendants' potential defenses, and prospects for success. This *Grinnell* factor thus also weighs in favor of preliminary approval.

### 4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiff's case is strong, it is not without risk. At the time of the settlement, Defendants were prepared to engage in fact and expert discovery in anticipation of its forthcoming motion for summary judgment, and had made it clear that they would vigorously contest the certification of a litigation class. *See* Klinger Decl. ¶¶ 13. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

In the context of this litigation, Plaintiff and the Class face risks in overcoming Defendants' forthcoming summary judgment motion and certifying a class. Moreover, further litigation will only delay relief to the Class Members. The proposed Settlement alleviates these risks, and provides a substantial benefit to the Class in a timely fashion. These *Grinnell* factors thus favor preliminary approval.

### 5. The Risks of Maintaining a Class Through Trial (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Class and such a determination would be reached only after exhaustive discovery and class certification briefing is filed. As described above, Defendants would likely argue in opposition to any motion for class certification that: (1) the circumstances for each individual putative class member (including but not limited to the arbitration issue described above and the variability among class members as to the information of theirs that was

purportedly compromised and, if at all, used) are so individualized that common issues will not predominate; (2) Plaintiff Fowler lacks standing; (3) key legal questions that will vary across potential class members; (4) any request for injunctive relief here would be moot and inappropriate; (5) a class action is not a superior method to resolve Plaintiff's claims, and (6) a class trial would not be manageable.

Were the Court to certify a class, Defendants would likely challenge certification through a Rule 23(f) petition and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. The proposed settlement eliminates this risk, expense, and delay. This factor weighs in favor of preliminary approval.

### 6. Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Defendants probably could withstand a greater judgment. However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d at 178, n.9). Thus, this factor is neutral.

### 7. The Reasonableness of the Settlement in Light of the Possible Recovery and the Attendant Risk of Litigation (*Grinnell* Factors 8 And 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought.  As the Second Circuit stated in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."  495 F.2d at 455 n.2.

Here, the settlement provides numerous immediate benefits, including the benefits of expense reimbursement for out-of-pocket losses or expenditures actually incurred by Class Members that were fairly traceable to the Data Incident (capped at $3,500 per Class Member), reimbursement of up to four (4) hours of lost time remedying issues fairly traceable to the Data Incident at $18 per hour, as well as 18 months of Credit Monitoring Protections to all Settlement Class Members who enroll (without the need to submit a claim form).[1]  *See* Settlement[2] ¶¶ 2.1-2.4.  Defendants have agreed to pay valid claims for out-of-pocket expenses and lost time for all Settlement class members up to a total of, and not to exceed, $350,000.00, in the aggregate.  In addition, Defendants have agreed to pay the costs and expenses of settlement administration.  Settlement ¶¶ 2.9.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, the Settlement is more than reasonable.  Moreover, where – as here – a settlement assures immediate payment to Class Members, and does not "sacrific[e] 'speculative payment of a hypothetically larger amount years down the road,'" the settlement is reasonable under this factor.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. Of*

---

[1] Financial fraud coverage provided through Aura Financial Shield focuses on protecting financial assets, freezing identity at 10 different Bureaus including the three main credit bureaus, home and property title monitoring, income tax protection and other services. This service is integrated with Early Warning Services to provide real-time monitoring of financial accounts. Financial Shield also carries a $1,000,000 policy protecting the subscriber.

[2] The Settlement is attached as Exhibit 1 to the Klinger Declaration.

*Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, \*5 (S.D.N.Y. May 14, 2004)).  Thus, these *Grinnell* factors also weigh in favor of preliminary approval.

In sum, all of the *Grinnell* factors weigh in favor of approval, or are neutral at worst.  If objections arise after notice is issued to the Class, the Court may reevaluate its determination.  Because the settlement on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

**B.      The Remainder of the Rule 23(e)(2) Factors Support Preliminary Approval**

**1.      The Allocation Plan is Fair and Adequate**

"Approval of a plan of distribution for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, i.e., the distribution plan must be fair, reasonable and adequate."  *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020).  Notably, an "allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class counsel."  *Id.*  Here, by making available to all Settlement Class Members 18 months of credit monitoring expenses, while also awarding Class Members reimbursement of out-of-pocket expenses actually incurred that are fairly traceable to the Data Incident, the allocation plan takes into account "the relative strength and values of different categories of claims."  *See In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008).

**2.      The Proposed Form and Method of Providing Notice to the Proposed Settlement Class are Appropriate**

"Notice need not be perfect, but need be only the best notice practicable under the circumstance, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."  *In*

*re Merrill Lynch & Coj., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007).  Co-Lead Interim Class Counsel respectfully submits that the proposed plan for notice is fair, reasonable, and adequate.  As recited in the Settlement and described above, the proposed notice will inform Potential Settlement Class Members of the Settlement's substantive terms. It will advise Potential Settlement Class Members of their options for remaining part of the Settlement Class or for opting out of the Settlement; for receiving their Settlement Benefits; for objecting to the Settlement; and how to obtain additional information about the Settlement. The proposed plan for notice—direct mail, the same method used by Defendants to notify Potential Settlement Class Members about the Data Incident in 2020 —is designed to directly reach a very high percentage of Potential Settlement Class Members, with consideration that potential Settlement Class Members' contact information is readily available and maintained by Defendants.  Accordingly, the Court should approve the plan for notice and the form and content of the notices.

### 3.      Attorneys' Fees and Expenses

The Parties have not agreed on a service award for Plaintiff or attorneys' fees and expenses.  Accordingly, Co-Lead Interim Class Counsel will apply for an award of attorneys' fees and expenses, for service payments to the Plaintiff, and will receive any applied-for fees and expenses only upon this Court's ruling regarding attorneys' fees and costs.  Defendants reserve the right to challenge Co-Lead Interim Class Counsel's claim for attorneys' fees, costs, and expenses, and the application for a service award to the Plaintiff.  Settlement ¶¶ 7.1-7.3.

### 4.      The Parties Have No Additional Agreements

Apart from the Settlement Agreement itself, there are no additional agreements.  *See* Klinger Decl., ¶ 17.

### 5.      Proposed Settlement Class Members are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether class members are treated equitably. As reflected in the plan of allocation, *see supra* §§ 7(B)(1), the proposed Settlement treats Settlement Class Members equitably relative to each other, and all Settlement Class Members will be giving Defendants the same release.

Because the proposed Settlement satisfies both the Rule 23(e)(2) factors and the *Grinnell* factors, the proposed Settlement should be preliminarily approved.

## III.   PROVISIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

Plaintiff respectfully requests that the Court conditionally certify the Settlement Class for purposes of effectuating the settlement.  The Court should determine that the proposed Settlement Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Newberg* § 11:27 (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768 (3d Cir. 1995)), and provisionally certify the settlement class, appoint Milberg Coleman Bryson Phillips Grossman, PLLC, Gibbs Law Group LLP, and Bursor & Fisher, P.A. as Class Counsel,[3] and Plaintiff Steven Fowler as the Class Representative.

As discussed below, all of the certification requirements for settlement purposes are met and Defendants consent to provisional certification[4].  *See Newberg* § 11.27 ("When the court has

---

[3] The Court previously appointed Joseph I. Marchese of Bursor & Fisher, P.A., Gary M. Klinger of Mason Lietz & Klinger LLP, and Rosemary M. Rivas of Levi & Korsinsky LLP as Co-Lead Interim Class Counsel.  ECF No. 35.  Gary M. Klinger is now affiliated with Milberg Coleman Bryson Phillips Grossman, PLLC and Rosemary M. Rivas is now affiliated with Gibbs Law Group LLP.

[4] Defendants consent to provisional certification for settlement purposes only, and such consent is conditioned on the Court's approval of the parties' settlement.  Defendants reserve their substantial

not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See In re GMC*, 55 F.3d at 784; *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *6 (D.N.J. July 10, 2006) (conditionally certifying multi-state classes and granting preliminary approval to nationwide wage and hour settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the members of the class

---

arguments in opposition to any motion to certify a litigation class in the event the settlement is not approved for any reason.

predominate over any questions affecting only individual
members, and that a class action is superior to other available
methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### A.     The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### 1.     Numerosity

Rule 23(a) requires that the members of the class be so numerous that joinder of all

members is impracticable.  While numerosity does not require a fixed number of class members,

"numerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*,

47 F.3d 473, 483 (2d Cir. 1995).  The Settlement Class likely consists of approximately 10,000

members.  Plaintiff believes, therefore, that the numerosity requirement of Rule 23(a) is readily

satisfied.

#### 2.     Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P.

23(a)(2). This threshold is satisfied if the question is "capable of class wide resolution – which

means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

(2011).  "[A] single [common] question will" satisfy the commonality inquiry.  *Id.* at 359.  "The

claims for relief need not be identical for them to be common." *Zivkovic v. Laura Christy LLC*,

329 F.R.D. 61, 69 (S.D.N.Y. 2018).  Rather, Rule 23(a)(2) is a "low hurdle," *Fort Worth*

*Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014), that may

be satisfied by even a single question of law or fact common to the class, *Wal-Mart Stores*, 564

U.S. at 369.

Plaintiff believes that he easily satisfies the "low hurdle" of demonstrating

commonality.  Plaintiff believes this action presents many questions common to the Settlement

16

Class.  Plaintiff asserts common questions that include: (a) whether Defendants were negligent with respect to safeguarding Plaintiff's and Class Members' personal information; (b) whether Defendants breach an implied contract with respect to safeguarding Plaintiff's and Class Members' personal information; and (c) whether the Class Members are entitled to damages. Plaintiff believes that these common questions, which target the same alleged misconduct by Defendants, satisfy Rule 23(a)(2).

### 3.   Typicality

The next requirement – typicality – requires that a class representative have claims that are typical of those of the putative class members.  Fed. R. Civ. P. 23(a)(2).  Plaintiff believes that typicality is met here.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class.  *Robidoux*, 987 F.2d at 936-37.  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."  *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Here, Plaintiff alleges that Defendants breached its implied contract with its employees and their beneficiaries, and that Defendants were negligent in safeguarding their personal information.  CCAC ¶¶ 1, 7-10.  Plaintiff contends his claims are typical of the other putative

class members.  *Id.* ¶ 89.  Accordingly, by pursuing his own claims in this matter, Plaintiff believes that he will necessarily advance the interests of the Settlement Class, and typicality is therefore satisfied.  *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014) (holding that the typicality requirement was satisfied where "the lead plaintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories").

### 4.    Adequacy

The final Rule 23(a) prerequisite requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Dziennik v. Sealift, Inc.*, 2007 WL 1580080, at *65 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

In this case, Plaintiff – like each and every one of the Settlement Class Members – is a current and/or former employee and/or beneficiary whose personal information was potentially compromised as a result of the Data Incident.  CCAC ¶ 90.  Thus, Plaintiff believes that he and the Settlement Class Members have the exact same interest in recovering the damages to which they are allegedly entitled.  As such, Plaintiff believes that he does not have any interests antagonistic to those of the proposed Settlement Class and their pursuit of this litigation is clear evidence of that.

Likewise, proposed Co-Lead Class Counsel has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Klinger Decl., Exs. 2-4 (Firm resumes of Milberg, Gibbs Law Group, and Bursor & Fisher).  Class Counsel regularly engages in major complex class action litigation, has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see also Ebin*, 297 F.R.D. at 566 ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.").

Further, proposed Co-Lead Class Counsel has devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, aggressively pursuing those claims through motion practice, conducting informal discovery, participating in a private mediation, and ultimately, negotiating a fair and reasonable settlement. Klinger Decl. ¶ 4.  In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

Accordingly, since Plaintiff and proposed Co-Lead Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  That Plaintiff

19

easily meets the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

Certification under Rule 23(b)(3) will allow class members to opt out of the settlement and preserve their right to seek damages independently. *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992). This approach protects class members' due process rights. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-48 (1999).

### 1.      Common Issues Predominate Over Any Individual Ones

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

In this case, there allegedly was a common course of conduct engaged in by Defendants. In these circumstances, courts find, particularly for purposes of settlement, that there is predominance of common questions over individual issues. *See In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous cases).

### 2.      A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient

adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[5]

Here, Plaintiff and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiff is unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations. Plaintiff believes that employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the expense of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023. A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims.

## IV.     THE COURT SHOULD PRELIMINARILY APPOINT NAMED PLAINTIFF AS SETTLEMENT CLASS REPRESENTATIVE

Plaintiff has actively participated in this case and has vigorously represented the interests of the Settlement Class. Specifically, Plaintiff has provided Class Counsel with information necessary to draft and file multiple complaints and represented the Settlement Class in settlement discussions. Moreover, Plaintiff is adequate because his interests are not antagonistic of those of

---

[5] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

the Settlement Class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Plaintiff, like members of the Settlement Class, were affected by the Data Incident, and seeks damages stemming from the same. Accordingly, the Court should preliminarily appoint Plaintiff as the Settlement Class Representative.

## V.      THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Here, the proposed Notice provides detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and a Service Award for Plaintiff; and 3) detailed information about the Released Claims. *See* Settlement Exhibits C and E (attached to Exhibit 1 of Klinger Decl.). In addition, the Notice provides information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information. *Id.* In short, the Notice is intended to fully inform Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights. The very detailed information in this proposed notice goes well beyond the requirements of the Federal Rules. Indeed, courts have approved class notices even when they provided only general information about a settlement. This information is adequate to put Class

22

Members on notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court enter an order preliminarily approving the proposed Settlement, provisionally certifying the proposed Settlement Class, appointing Plaintiff as Settlement Class Representatives, appointing Milberg Coleman Bryson Phillips Grossman, PLLC, Gibbs Law Group LLP, and Bursor & Fisher, P.A. as Class Counsel, and approving the proposed schedule.

Dated: August 15, 2022

Respectfully submitted,

By:    */s/ Gary M. Klinger*

Gary M. Klinger
**Milberg Coleman Bryson Phillips Grossman, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
Email: gklinger@milberg.com

Rosemary M. Rivas
**Gibbs Law Group LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: 510-350-9700
Email: rmr@classlawgroup.com

Joseph I. Marchese
Alec M. Leslie
**Bursor & Fisher, P.A.**
888 Seventh Avenue
New York, NY 10019
Tel: (646)-837-7150
Email: jmarchese@bursor.com
          aleslie@bursor.com

*Co-Lead Interim Class Counsel*

23