UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: GE/CBPS DATA BREACH LITIGATION | Case No. 1:20-cv-02903-KPF |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD**

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

I. THE REQUESTED FEE AWARD IS FAIR AND REASONABLE UNDER
EITHER THE PERCENTAGE-OF-RECOVERY APPROACH OR THE
LODESTAR MULTIPLIER METHOD ........................................................................ 1

    A.    The Award of Attorneys' Fees Should Be Based on the Entire Recovery Created
by Class Counsel's Efforts ..................................................................................... 1

        1.    The Court Should Consider the Entire $350,000 That Defendants Have Agreed
to Pay in Awarding Fees. ........................................................................... 1

        2.    The Court Should Consider the Full Retail Value of the Non-Monetary Benefits
to the Entire Class ...................................................................................... 3

    B.    The Requested Fee Award Is Reasonable Under the Lodestar Multiplier Method. ........... 5

        1.    Class Counsel's Hourly Rates Are Reasonable. ............................................. 5

        2.    Class Counsel's Total Hours Are Reasonable. ............................................... 6

    C.    The Goldberger Factors Support Class Counsel's Fee Request. ....................................... 7

II. CLASS COUNSEL ADEQUATELY SUPPORTED THEIR APPLICATION FOR
FEES AND REIMBURSEMENT OF EXPENSES .................................................. 8

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                               Page(s)

*Aguallo v. Kemper Corp.*,
   No. 21-cv-01883 (N.D. Ill.) .................................................................................................... 7

*Blessing v. Sirius XM Radio Inc.*,
   No. 09 CV 10035 (HB), 2011 WL 3739024 (S.D.N.Y. Aug. 24, 2011), *aff'd,* 507 Fed.
   Appx. 1 (2d Cir. 2012) ........................................................................................................... 4

*Chakejian v. Equifax Info. Servs., LLC*,
   275 F.R.D. 201 (E.D. Pa. 2011) ......................................................................................... 3, 7

*Fox v. Vice*,
   563 U.S. 826 (2011) ................................................................................................................ 8

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .................................................................................................. 6, 8

*Hillis v. Equifax Consumer Services, Inc.*,
   No. 104-CV-3400-TCB, 107-CV-314-TCB, 2007 WL 1953464
   (N.D. Ga. June 12, 2007) ................................................................................................... 3, 7

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .............................. 4, 7

*In re Home Depot Inc., Consumer Data Sec. Breach Litig.*,
   931 F.3d 1065 (11th Cir. 2019) ................................................................................................ 2

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) .................................. 2, 5

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) .................................. 4

*Masters v. Wilhelmina Model Agency*,
   473 F.3d 423 (2d Cir. 2007) ..................................................................................................... 1

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D. N.J. 2008) ......................................................................................... 4

*Murray v. UBS Sec., LLC*,
   14 Civ. 927 (KPF), 2020 WL 7384722 (S.D.N.Y. Dec. 16, 2020) ............................................ 5

*Parker v. Time Warner Entm't Co., L.P.*,
   631 F. Supp. 2d 242 (E.D.N.Y. 2009), *aff'd,* 378 Fed. Appx. 63 (2d Cir. 2010) ........................ 2

*Toretto v. Donnelley Fin. Solutions, Inc.*,
   583 F. Supp. 3d 570 (S.D.N.Y. 2022) ........................................................................................ 7

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Markets*,
   12 Civ. 9412 (PAE), 2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) .......................................... 5

*Vista Outdoor Inc. v. Reeves Family Tr.*,
   16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018) ..................................................... 5

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir.1999) ............................................................................................. 1, 2

*Williams v. MGM–Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir.1997) .................................................................................................... 2

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG),
   2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .............................................................................. 9

*Zink v. First Niagra Bank, N.A.*,
   No. 13-CV-01076-JJM, 2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016) .................................... 2

# **INTRODUCTION**

Defendants recklessly handled Settlement Class Members' confidential information by failing to take simple precautions against phishing scams, thereby needlessly subjecting former and current GE employees to a risk of identity theft for years to come. Instead of attempting to reach a reasonable settlement at the outset of the case given the small size of the class, Defendants tried to derail and dismiss it, first by filing a motion to compel arbitration and seeking a stay, and then by moving to dismiss. Unable to delay the case or get it dismissed, Defendants then engaged in hardball settlement negotiations and took impossible positions; these negotiations lasted almost a year. Class Counsel pushed for a settlement that was fair, reasonable, and adequate, and at one point in time walked away from negotiations. They ultimately agreed to a settlement that they believe is fair, reasonable, and adequate, and thus they should be fairly compensated for their services and reimbursed for their litigation expenses. As explained in further detail below, whether the Court applies the percentage-of-recovery approach with a lodestar cross-check or the lodestar-multiplier method, Class Counsel's requested fees are reasonable.  Plaintiff respectfully requests that the motion be granted.

**I.     THE REQUESTED FEE AWARD IS FAIR AND REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY APPROACH OR THE LODESTAR MULTIPLIER METHOD.**

   **A.     The Award of Attorneys' Fees Should Be Based on the Entire Recovery Created by Class Counsel's Efforts.**

      **1.     The Court Should Consider the Entire $350,000 That Defendants Have Agreed to Pay in Awarding Fees.**

Defendants do not dispute that the preferred method for calculating fees in the Second Circuit is the percentage-of-the recovery method; nor do Defendants dispute that it is within the Court's discretion to do so. *See* ECF No. 102, pp. 6-7. Instead, Defendants argue that fees should be based on the claims rate. Defendants' position is contrary to *Masters v. Wilhelmina Model Agency,* 473 F.3d 423, 437 (2d Cir. 2007), where the Second Circuit held that an "allocation of fees by percentage should therefore be awarded on the basis of the total funds made available,

whether claimed or not." *Id.* (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir.1999) and *Williams v. MGM–Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.1997)). While *Waters* and *Williams* involved funds with reversions, (unlike *Masters* which had unclaimed funds going to *cy pres*), *Masters* still sided with those cases rejecting an award of fees on the basis of the claims made. *See Waters*, 190 F.3d at 1292; *Williams*, 129 F.3d at 1027.

*Masters*' holding applies here too because a claims-made settlement is "functional[ly] equivalent" to a reversionary fund settlement, as noted by the court in *Zink v. First Niagra Bank, N.A.*, No. 13-CV-01076-JJM, 2016 WL 7473278, at *8 (W.D.N.Y. Dec. 29, 2016). Recognizing the value of class actions as a deterrent to unlawful behavior and as a private law enforcement regime that frees up public resources, the court in *Zink*[1] explained that it was important for class counsel to be adequately compensated and that:

> [L]imiting counsel to a percentage of the class's actual recovery in a claims-made or reversionary fund situation is likely to disgorge significantly less money overall, providing *defendants* with what might be characterized as a windfall. All things being equal, it seems more defensible that class attorneys, rather than defendants, receive the excess, as they will likely reinvest it in future class action cases.

*Zink*, 2016 WL 7473278, at *9.

Defendants cite *In re Home Depot Inc., Consumer Data Sec. Breach Litig.*, 931 F.3d 1065, 1092 (11th Cir. 2019) for the proposition that in claims-made settlements "the appropriate measure of the value to the class is the actual 'payment to the class.'" ECF No. 102, p. 10, fn. 7. *In re Home Depot* says no such thing; that case did not involve a claims-made settlement, much less raise the

---

[1] The court in *Zink* was initially inclined to follow the case cited by Defendants here, *Parker v. Time Warner Entm't Co., L.P.,* 631 F. Supp. 2d 242, 267 (E.D.N.Y. 2009), *aff'd*, 378 Fed. Appx. 63 (2d Cir. 2010) but later found the weight of the authority was to the contrary. *See Zink,* 2016 WL 7473278, at *7. In any event, *Parker* did not consider that the cases *Masters* relied on (*Waters* and *Williams*) involved settlements with reversions. *Parker,* 631 F. Supp. 2d at 264-66. Nor did the court in *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.,* No. 18-CV-8472 (PKC), 2022 WL 2063864, at *14 (S.D.N.Y. June 8, 2022) consider this. Moreover, one of the primary reasons the court in *In re Hudson's Bay* did not consider the entire $2 million the defendant had agreed to pay was because of the defendant's hands on role in administering the settlement, including its insistence that claims be submitted by mail instead of online. *Id.* at *15. Here, in contrast, all claims may be submitted online and with respect to Financial Shield, it is unnecessary to submit a claim. In any event, *Zink* is the more thorough and better reasoned decision.

issues in this case. *See id.* at 1071.[2]

Further, Plaintiff agreed to the $350,000 cap not because the case is weak (as Defendants argue), but because the class size is small.

### 2. The Court Should Consider the Full Retail Value of Non-Monetary Benefits to the Entire Class.

Defendants also mischaracterize the benefits of Financial Shield as if it was simply credit monitoring and misrepresent the caselaw regarding how non-monetary benefits are valued. Unlike other class action settlements, all Settlement Class Members are automatically entitled to receive Financial Shield without submitting a claim or any documentation. Apart from real time account monitoring, Financial Shield provides many other benefits such as dark web monitoring, identity and financial fraud restoration services, and $1 million in insurance backed by AIG to compensate for unreimbursed money lost due to identity theft. ECF No. 100, ¶ 6 (Thompson Decl.).

Moreover, Financial Shield provides for open enrollment, meaning that Settlement Class Members may enroll at any time during the 18-month coverage period. ECF No. 100, ¶¶ 4, 8; *see* Supplemental Declaration of Gerald W. Thompson ("Supp. Thompson Decl."), ¶ 3. So, if a Settlement Class Member discovers identity theft and monetary losses (whether related to the GE data breach or not) in month 17, they can enroll in Financial Shield at that time. Supp. Thompson Decl. ¶ 4. If Aura's restoration and remediation efforts are unsuccessful, the Settlement Class Member may recover unreimbursed money lost—up to $1 million—from the AIG insurance policy. *Id.* Although a Settlement Class Member may never have a need to use Financial Shield, they still get financial protection against a loss, as with auto insurance or an extended warranty. Just because a person would never use the extended warranty or submit a claim to their auto insurance does not mean they received no benefit from those products. The same is true here.

---

[2] Plaintiff notes that *In re Home Depot,* the court held that in non-common fund cases the court can award fees spent on a motion seeking attorneys' fees. *See, e.g.,* 931 F.3d at 1093. Plaintiffs will ask the Court to consider the fees incurred in filing this motion for fees, responding to Defendants' arguments, and in supervising the claims process and will update the Court as to their time on February 8, 2023 per the Court's Preliminary Approval Order. ECF No. 94 at ¶ 29 (e).

Contrary to Defendants' argument, the Financial Shield benefits to the Settlement Class are properly valued at $1,482,192. Although there are no Second Circuit cases directly on point, the weight of relevant authority supports basing attorneys' fees on the retail value of Financial Shield to the entire Settlement Class. For example, in *Chakejian v. Equifax Info. Servs., LLC,* 275 F.R.D. 201, 218 (E.D. Pa. 2011), using both the lodestar and the percentage-of-recovery methods, the court awarded $1,075,000 in fees (or 11%) of a what it called a "fund," consisting of $9,675,981 in credit monitoring services provided to the class. *Id.* at 218. The court arrived at the $9,675,891 value by multiplying the retail value of $233.10 times the 40,000 class members. *Id.* Similarly, in *Hillis v. Equifax Consumer Services, Inc.,* No. 104-CV-3400-TCB, 107-CV-314-TCB, 2007 WL 1953464, at *4-5 (N.D. Ga. June 12, 2007), the court awarded attorneys' fees of $4 million based on a settlement providing a credit score product to 6.6 million class members with a retail value of $8.95 per month.

This approach is consistent with how many courts, including in the Second Circuit, have awarded fees based on non-monetary benefits. Specifically, courts have based attorneys' fees on the value of the non-monetary relief to the entire class, notwithstanding some uncertainty as to whether the class members will make a claim. For example, in *Blessing v. Sirius XM Radio Inc.,* No. 09 CV 10035 (HB), 2011 WL 3739024, at *4 (S.D.N.Y. Aug. 24, 2011), *aff'd,* 507 Fed. Appx. 1, 3 (2d Cir. 2012), the court awarded $13 million in fees under both a lodestar and percent of the recovery approach where there were no cash payments to class members and only defendant's agreement not to raise prices for five months and forego $180 million in revenue. Similarly, in *McCoy v. Health Net, Inc.,* 569 F. Supp. 2d 448, 478 (D. N.J. 2008), the court awarded 28% of the common fund and the lowest estimated value of the injunctive relief, which provided for coverage of claims at 90% of billed charges and an appeal process. *Id.* at 453-54. In both cases, it was uncertain how many class members would take advantage of the benefits, nevertheless the courts considered the benefits in their entirety.

While Defendants argue that "courts have repeatedly refused to use the total retail value of credit monitoring to *all* individual class members" (ECF No. 102, p. 11) (emphasis in original),

4

they only cite two cases by the same judge: *In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2018 WL 3960068, at *7 (N.D. Cal. Aug. 17, 2018) and *In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* No. 16-MD-02752-LHK, 2020 WL 4212811, at *34 (N.D. Cal. July 22, 2020). Although in *In re Anthem* and *In re Yahoo!,* the court did not consider the retail value of the credit monitoring in awarding fees, the court in *In re Anthem* lauded class counsel's achievement and said that "the credit monitoring services (available to Settlement Class Members who submit a claim) are certainly worth more to individual Settlement Class Members than the discounted rate paid for the services in bulk." *Id.* at 11. In any event, both cases are distinguishable because neither case provided for Financial Shield with open enrollment and without the need to submit a claim or mention the availability of an insurance policy to recover lost money as in this case.[3] Again, Financial Shield is more than just credit monitoring and is more akin to insurance or an extended warranty.

### B. The Requested Fee Award Is Reasonable Under the Lodestar Multiplier Method.

#### 1. Class Counsel's Hourly Rates Are Reasonable.

Defendants again misrepresent that Plaintiffs failed to provide any support showing their hourly rates are reasonable. Each firm submitted its firm resume setting forth their credentials, experience, and background. ECF No. 97, Exh. A (Klinger Decl.); ECF No. 99, Exh. A (Rivas Decl.); ECF No. 96, Exh. A (Leslie Decl.); ECF No. 98, Exh. A (Maccarone Decl.). Moreover, Mr. Leslie's declaration sets forth more than a dozen cases where courts have found that Bursor & Fisher's hourly rates are reasonable. ECF No. 96, ¶ 34. In any event, Class Counsel have provided further evidence supporting their hourly rates in their supplemental declarations filed herewith. *See* Supp. Rivas Decl., Exh. 1; Supp. Leslie Decl., Exh. A; Supp. Klinger Decl., Exh. 1; Supp. Maccarone Decl., Ex. A.

Further, in their opening brief, Plaintiffs cited a number of cases showing that their hourly

---

[3] Defendants also argue that another case settled by the Milberg firm did not seek fees based on the retail value of the credit monitoring to the entire class. ECF No. 102, pp. 13-14. That case, however, did not involve Financial Shield. *See* ECF No. 104-1, Exh. A (Chernoff Decl.).

rates are reasonable in this District. For example, in *In re Hudson's Bay,* a data breach class action in this District, the court found that senior partner rates of $900-$1000, associate rates of $350-$650 (with some senior associates billing at $700), and paralegal rates of $150 to $400 were reasonable. *Id.,* 2022 WL 2063864, at *19. Defendants' attempts to distinguish *Vista Outdoor Inc. v. Reeves Family Tr.,* 16 Civ. 5766, 2018 WL 3104631, at *4 (S.D.N.Y. May 24, 2018) and *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Markets,* 12 Civ. 9412 (PAE), 2016 WL 6996176, at *5-8 (S.D.N.Y. Nov. 30, 2016) fail as those cases apply the same standard applicable here: the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." In the case cited by Defendants, *Murray v. UBS Sec., LLC,* 14 Civ. 927 (KPF), 2020 WL 7384722, at *15 (S.D.N.Y. Dec. 16, 2020), the Court reduced the rates based on the facts of that case, including the rates set forth in the retainer agreements with the plaintiffs there.

### 2. Class Counsel's Total Hours Are Reasonable.

Defendants provide no evidence to support their argument that Class Counsel overbilled on the case or that the 580 hours of work is unreasonable. They make no mention of the hours their lawyers spent defending the case and needlessly dragging out settlement negotiations, nor do they cite any data breach cases where similar work that Class Counsel performed here took less hours. In fact, a review of another data breach case that was pending for less time and involved little motion practice shows that Class Counsel's hours are reasonable. For example, in *In re Citrix Data Breach Litig.,* No. 19-cv-61350-ALTMAN/Hunt (S.D. Fla.), class counsel there (consisting of four law firms and one local counsel) spent 1,298.90 hours on the case. *See* Supp. Rivas Decl. ¶ 11. As in this case, class counsel there investigated the nature and scope of the data breach, researched potential claims, consulted with experts, interviewed data breach victims, and drafted the consolidated complaint, among other things. *Id.* Here, Class Counsel billed about 45% of the hours that were billed in *In re Citrix*, which again, did not involve a motion to dismiss or a motion to compel arbitration.

Finally, Defendants ask this Court to apply a negative multiplier to Class Counsel's

6

lodestar. Defendants cite no case law supporting such a drastic and uncalled for result.[4] Even more absurd is the proposed 50% negative multiplier that Defendant has pulled out of thin air. Defendants contend that this was an "exceedingly weak [] data breach case," but Plaintiff survived a motion to dismiss and obtained relief even for those Settlement Class Members who may be subject to arbitration. ECF No. 102, p. 18. While the recovery is not as large as in other data breach cases, that is because the size of the class is small.

### C. The *Goldberger* Factors Support Class Counsel's Fee Request.

Defendants also argue that the factors from *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) do not support Class Counsel's fee request. Not so. In their fee petition, Class Counsel detail why their fee request satisfies the *Goldberger* factors. ECF No. 101, pp. 13-22. Still, Defendants argue without any support that there was "minimal" risk of nonpayment. ECF No. 102. That is not true; many data breach cases have been dismissed at the pleading stage and few data breach class actions have been certified. Moreover, Plaintiff and Class Counsel walked away from settlement negotiations (*see, e.g.,* ECF No. 77) and other times threatened to do so and return to litigation.

Class Counsel also submitted a declaration from Gerald Thompson that confirms that the Financial Shield services available to Settlement Class Members (without the need to submit a claim or documentation) are worth $1.4 million on the open market. ECF No. 100, p. 4 at ¶ 9. It makes no difference that Defendants were able to pay a negotiated "bulk price" on Financial Shield. The Settlement Class Members could not obtain this price themselves and Defendants' position is contrary to what other courts have held. See *In re Anthem*, 2018 WL 3960068, at *11 (stating credit monitoring worth more to individual class members than bulk price); *Chakejian,* 275 F.R.D. at 218 (considering retail value); *Hillis*, 2007 WL 1953464, at *4-5 (same); *Aguallo v. Kemper Corp.*, No. 21-cv-01883 (N.D. Ill.) at ECF Nos. 46, 53 (granting requested fees based in part on retail value of Financial Shield). Moreover, not only are the benefits that Class Counsel

---

[4] While Defendant cites a few cases where hours were reduced, none of those cases appear to support the application of a 50% negative multiplier.

7

obtained for the Settlement Class fair, reasonable, and adequate, but the decision they obtained from the Court on the motion to dismiss has now been cited in other data breach decisions for the benefit of other consumers who have been victimized by a company's failure to safeguard their information. *See, e.g., Toretto v. Donnelley Fin. Solutions, Inc.,* 583 F. Supp. 3d 570, 595 (S.D.N.Y. 2022).

The retail value of Financial Shield, along with the cash component of the Settlement, amounts to approximately $1.867 million. Class Counsel's fee request of 25% or $466,798.00 is reasonable, especially when their lodestar falls squarely in line with the request. Far from being a "windfall," Class Counsel merely seek to recover the reasonable value of their services.

## II. CLASS COUNSEL ADEQUATELY SUPPORTED THEIR APPLICATION FOR FEES AND REIMBURSEMENT OF EXPENSES.

Defendants also argue that the Court should deny or reduce the fee award to Class Counsel and deny their request for reimbursement of expenses because they did not submit their time records or receipts with their application. ECF No. 102, pp. 7-10. Class Counsel, however, have submitted detailed declarations under the penalty of perjury and subject to Rule 11 setting forth the work they performed and the number of hours they billed based on their contemporaneous billing records. *See* ECF No. 97, ¶¶ 8-27; ECF No. 99, ¶¶ 8-25; ECF No. 96, ¶¶ 7-24 and ¶¶ 28-31; ECF No. 98, ¶ 4. That is more than sufficient. As the United States Supreme Court has made clear, "determination of fees should not result in a second major litigation," and "trial courts need not, and indeed should not, become green-eyeshade accountants[.]" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citation and internal punctuation omitted). Rather, the "essential goal" in making a fee determination is "to do rough justice, not to achieve auditing perfection." *Id.* In fact, "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Nevertheless, Class Counsel submit herewith their time records for the Court's review.

Defendants also criticize Class Counsel for including time for "28 billers at four law firms." ECF No. 102, p. 8. There was never a point in time, however, where four law firms worked on this

case at the same time. As Defendants concede, Ms. Rivas changed law firms, at which point Levi & Korsinsky no longer worked on the case and Ms. Rivas was the primary biller at her new firm. Moreover, while Bursor & Fisher submitted time for 12 attorneys and staff members, Defendants neglect to mention that 10 of those attorneys and staff members billed fewer than six hours each for discreet projects such as gathering exhibits for filings, etc. *See* ECF No. 96, Exh. B. In fact, eight billed fewer than two hours. *Id.* Similarly, for Milberg, only one person billed more than 20 hours to the case even though they submitted time for 10 attorneys and staff members. *See* ECF No. 97, p.7. While Class Counsel believe such time was appropriately included in their lodestar, if the Court is inclined to eliminate such time due to the number of timekeepers, Class Counsel will agree to eliminate hours for timekeepers who billed less than 15 hours to the case, for a total lodestar of $33,550.60 being eliminated. Class Counsel's revised lodestar is $393,843.90. The requested award of 25% of the value of the benefits (or $466,798.00) to the class is nevertheless reasonable because it only represents a small positive multiplier on Class Counsel's time of approximately 1.185. This positive multiplier will be even smaller and may become a negative multiplier based on additional work in supervising the settlement process, preparing the papers in support of final approval, and the fees incurred in connection with this motion should the Court consider them.

Finally, Defendants assert that this was a "small case that required close to no work from Class Counsel." ECF No. 102, p. 8. That is simply false. Defendants ignore that this case has been litigated for nearly three years and involved protracted settlement negotiations that took nearly a year to complete. *See, e.g.*, ECF No. 97, ¶¶ 15-16 (Klinger Decl.). Class Counsel did not simply oppose a motion to dismiss and engage in settlement negotiations as Defendants suggest. They also thoroughly investigated the facts and the claims, drafted the consolidated complaint, analyzed Defendants' motion to compel arbitration, worked with an expert, and prepared case management filings. While Defendants may claim that certain work should not be compensated, *i.e.*, investigative work/research related to the complaints and work in connection with analyzing the motion to compel arbitration, that work guided Class Counsel in evaluating the case's strengths

9

and weaknesses and proceeding with litigation versus ultimately agreeing to the settlement terms. Moreover, Class Counsel will perform additional work as discussed herein, including thoroughly supervising the claims administrator's activities and claim determinations. Class Counsel have more than adequately documented the work they performed and the hours they have billed. The Court should grant the motion for an award of attorneys' fees and costs.

Finally, the Court should approve the litigation expenses. As stated in paragraph 32 of the Leslie Declaration (ECF No. 96), these "costs and expenses are primarily comprised of filing fees and mediation fees." *See also* ECF No. 96, Exh. C (itemized breakdown of expenses). Filing fees and mediation fees have routinely been found to be reasonable and incidental to litigation efforts. *See, e.g., Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013). Nevertheless, Class Counsel submit the corresponding receipts herewith and seek a total of $12,345.54 in expenses. *See* Supp. Leslie Decl., Exh. B; Supp. Klinger Decl., ¶ 16; Supp. Maccarone Decl., Exh. B.

## CONCLUSION

Plaintiff respectfully requests that the Court award Class Counsel 25% of the value of the Settlement benefits (or $466,798.00), $12,345.54[5] for reimbursement of expenses, and the uncontested $1,500 Service Award to Plaintiff Fowler. Or, if the Court wishes to use the lodestar-multiplier method, Plaintiff requests their lodestar of $393,843.90 plus a small multiplier of approximately 1.185 and their expenses of $12,345.54.

Respectfully submitted,

DATED: December 16, 2022                By: */s/ Rosemary M. Rivas*

Rosemary M. Rivas (*pro hac vice*)
**Gibbs Law Group LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607

---

[5] Plaintiff's fee motion (ECF No. 95) requested $12,345.54 for reimbursement of litigation expenses. They have deducted $597.62 because certain receipts reflecting those expenses could not be located despite the expenses being in the respective firm's records.

10

Tel: 510-350-9700
Email: rmr@classlawgroup.com

Joseph I. Marchese
Alec M. Leslie
**Bursor & Fisher, P.A.**
888 Seventh Avenue
New York, NY 10019
Tel: 646-837-7150
Email: jmarchese@bursor.com
         aleslie@bursor.com

Gary M. Klinger
**Milberg Coleman Bryson Phillips Grossman, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 847-208-4585
Email: gklinger@milberg.com

*Class Counsel*