UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: GE/CBPS DATA BREACH LITIGATION

Case No. 1:20-cv-02903-KPF

**MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVE
PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ iv

I.     INTRODUCTION ......................................................................................... 1

II.    FACTUAL AND PROCEDURAL SUMMARY ................................................ 2

       A.    The Data Incident Exposes Settlement Class Members to Identity Theft ............. 2

       B.    Procedural History ......................................................................... 3

II.    SUMMARY OF SETTLEMENT ................................................................. 5

       A.    The Class Definition ...................................................................... 5

       B.    Monetary Compensation ................................................................. 5

       C.    Credit Monitoring and Identity Theft Restoration ................................. 6

       D.    Data Security Measures .................................................................. 8

       D.    Release ...................................................................................... 9

       E.    Fees, Costs, and Service Awards ..................................................... 9

       F.    Notice And Claims ........................................................................ 9

            1.  Direct Mail Notice .............................................................. 9

       G.    Settlement Post Office Box, Website, Toll-Free Number,
            and Email Address ...................................................................... 11

       H.    Claims ...................................................................................... 12

       I.    Requests For Exclusion and Objections ............................................. 12

III.   LEGAL STANDARD .................................................................................. 13

IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT........ 15

       A.    The Settlement Administrator Provided Notice Pursuant to this Court's
            Preliminary Approval Order and Satisfied Due Process as well as Rule 23 ........ 15

       B.    The Settlement Terms Are Fair, Adequate, and Reasonable, and
            Warrant Approval ....................................................................... 17

C.    The Settlement Agreement Meets the Requirements of Rule 23 and
      Should Be Approved ................................................................... 18

      1.   The Class Representatives and Class Counsel Have Adequately
           Represented the Class ........................................................ 18

D.    The Settlement Was Negotiated at Arm's Length ................................ 20

E.    The Monetary Relief Provided for the Settlement Class is Adequate ................. 20

F.    The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor
      of Final Approval ...................................................................... 21

G.    The Effectiveness of Any Proposed Method of Distributing
      Relief to the Settlement ............................................................. 23

H.    The Terms of the Proposed Award of Attorneys' Fees Weigh in
      Favor of Final Approval .............................................................. 24

I.    There Are No Agreements Required to Be Identified Under Rule 23(e)(3) ......... 24

J.    The Settlement Treats Class Members Equitably Relative to Each Other. .......... 24

K.    The Settlement Also Warrants Approval in Light of the *Grinnell*
      Factors Traditionally Considered by Second Circuit Courts .............................. 25

      1.   *Grinnell* Factor 1: The complexity, expense, and likely duration
           of litigation weighs in favor of approval ....................................... 25

L.    *Grinnell* Factor 2: Class reaction signals approval of the
      Settlement Agreement ................................................................ 26

M.    *Grinnell* Factor 3: The stage of litigation and discovery completed
      favors approval ....................................................................... 26

N.    *Grinnell* Factors 4, 5, and 6: The risks of establishing liability, damages, and
      maintaining a class action through trial weigh in favor of settlement approval ... 27

O.    *Grinnell* Factor 7: The ability of the Defendant to withstand a greater
      judgment is not at issue here ........................................................ 28

P.    *Grinnell* Factors 8 and 9: The Settlement provides for substantial relief
      for the Settlement Class, especially in light of all attendant risks of litigation .... 28

V.    CONCLUSION .......................................................................... 29

## TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................... 13

*Babcock v. C. Tech Collections, Inc.*,
   No. 1:14-cv-3124, 2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017) ........................... 23

*Baksh v. IvyRehab Network, Inc.*,
   No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) ........................................................ 21

*Banyai v. Mazur*,
   No. 00-cv-9806, 2007 WL 927583 (S.D.N.Y. Mar. 27, 2007)................................. 21

*Castagna v. Madison Square Garden, L.P.*,
   No. 09-cv-10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011)............................... 26

*Cece et al. v. St. Mary's Health Care System, Inc. et al.*,
   No. SU20CV0500 (Ga. Super. Ct. Athens/Clarke Cnty.)........................................ 20

*Cicciarella et al v. Califia Farms, LLC*,
   No. 7:19-cv-08785, 2020 WL 1320866 (S.D.N.Y. 2020) ....................................... 17

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)........................................................................... passim

*Cohen v. J.P. Morgan Chase & Co.*,
   262 F.R.D. 153 (E.D.N.Y Sept. 24, 2009) ............................................................. 14

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)..................................................................................... 18

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)..................................................................................... 14

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)................................................................................... 13

*Denney v. Jenkens & Gilchrist*,
   230 F.R.D. 317, 328 (S.D.N.Y. Feb. 18, 2005), aff'd in part and vacated in part,
   443 F.3d 253 (2d Cir. 2006)................................................................................... 15

*Diaz v. E. Locating Serv. Inc.*,
   No. 1:10-cv 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)............................ 26

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................ 21

*Fox v. Iowa Health Sys.*,
  No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021)................................. 22

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 185 (W.D.N.Y. 2005)................................................................. 27, 28

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
  328 F.R.D. 35 (W.D.N.Y. 2018)..................................................................... 14

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)......................... 22

*Hadel v. Gaucho*,
  No. 15-cv 3706, 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ............................... 15

*Hall v. ProSource Technologies, LLC*,
  No. 14-cv 2502, 2016 WL 1555128 (E.D.N.Y. 2016)....................................... 16

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)........................... 22

*Hart v. RCI Hosp. Holdings, Inc.*,
  No. 09-cv-3043, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ........................... 15

*Hernandez v. Immortal Rise, Inc.*,
  306 F.R.D. 91 (E.D.N.Y. 2015) ................................................................. 16

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................ 20, 27, 28

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................... 27

*In re GSE Bonds Antitrust Litigation*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)..................................................... 15, 18, 20

*In re GSE Bonds Antitrust Litigation*,
  No. 19-cv-1704, 2020 WL 3250593 (Slip Op.) (S.D.N.Y. June 16, 2020) ................. 14, 18

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013).................................................................. 22

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. June 10, 2009)................................................................ 17

*In re Interpublic Secs. Litig.*,
   No. 02-cv-6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)................................ 26

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ......................................................................... 27

*In re Luxottica Group S.P.A. Secs. Litig.* (*In re Luxottica Group Litig.*),
   233 F.R.D. 306 (E.D.N.Y.2006).............................................................................. 15

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................ 27

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ................................................................................ 25

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d. Cir. 2004).................................................................................. 27

*Jackson-Battle v. Navicent Health Inc.*,
   No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty. Aug. 4, 2021)........................... 20

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1324 (S.D. Fla. 2005) ................................................................... 25

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014)....................................................... 13

*Long v. HSBC USA Inc.*,
   No. 14 -cv-6233, 2015 WL 5444651 (S.D.N.Y. Sep. 11, 2015) ............................. 22

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................... 26

*Manley v. Midan Rest. Inc.*,
   No. 14-cv-1693 2016 WL 1274577 (S.D.N.Y. 2016) ............................................. 21

*Massiah v. MetroPlus Health Plan, Inc.*,
   No. 11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)................ 21

*McWhorter v. Ocwen Loan Servicing LLC*,
   No. 2:15-cv-01831, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019).......................... 25

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015).........................................................................................21

*Mowery v. Saint Francis Healthcare Sys.*,
  No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020)....................................................................21

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950).....................................................................................................................15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985).....................................................................................................................15

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
  No. 94-cv-5587, 2003 WL 21136726  (S.D.N.Y. May 15, 2003) ............................................26

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011). .......................................................................................28

*Springer v. Code Rebel Corp.*,
  No. 16-cv-3492, 2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) ...............................................14

*Steinmetz v. Brinker Int'l, Inc.*,
  No. 21-13146 (11th Cir. Sept. 16, 2021). ..................................................................................28

*Torres v. Gristede's Operating Corp.*,
  No. 04-CV-3316, 2010 WL 2572937 (S.D.N.Y. June 1, 2010) ...............................................16

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 3-cv-8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .................................................27

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)...........................................................................................14, 16, 26

*Willix v. Healthfirst, Inc.*,
  No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .................................................21

*Woodward v. NOR–AM Chem. Co.*,
  No. Civ-94-0870, 1996 WL 1063670 (S.D. Ala. May 23, 1996) .............................................25

*Zeltser v. Merrill Lynch & Co.*,
  No. 13-cv-1531, 2014 WL 4816134 (S.D.N.Y. Sep.23, 2014) .................................................21

## STATUTES

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715(b) ........................................... 10

## RULES

Fed. R. Civ. P. 23 ........................................................................................................ 14, 15, 18

Fed. R. Civ. P. 23(a) .................................................................................................... 13

Fed. R. Civ. P. 23(b) .................................................................................................... 13

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 15, 16

Fed. R. Civ. P. 23(c)(3) ................................................................................................ 16

Fed. R. Civ. P. 23(e) .......................................................................................... passim

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 17, 20

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................................... 18

Fed. R. Civ. P. 23(e)(2)(A)-(D) ................................................................................... 17

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................................... 20

Fed. R. Civ. P. 23(e)(3) ........................................................................................ 17, 24

## OTHER AUTHORITIES

Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr.,
"*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010) ...................17

Class Representative Plaintiff Steven Fowler ("Plaintiff") submits this Memorandum in Support of Class Representative Plaintiff's Motion for Final Approval of Class Action Settlement.

## I.  INTRODUCTION

On August 24, 2022, this Court preliminarily approved the Class Action Settlement Agreement reached by Plaintiff and Defendants General Electric Company and Canon Business Process Services, Inc. To address the harms caused by the Data Incident, Plaintiff and Class Counsel negotiated a settlement they anticipate will be sufficient to make Settlement Class Members whole and protect them against identity theft that may arise in the future.  The Settlement provides three types of key benefits: (1) cash reimbursement for out-of-pocket losses incurred; (2) compensation for lost time (up to four (4) hours of lost time reimbursable at a rate of $18 an hour) spent mitigating the effects of the Data Incident; and (3) eighteen (18) months of Credit Monitoring Protections provided by Aura's Financial Shield Services. Importantly, Settlement Class Members do not have to submit a claim to receive Financial Shield—it is automatically provided to them under the settlement and they and may enroll in Financial Shield at any time during the 18-month coverage period. In addition to the benefits described above, the Settlement Agreement provides that Defendants are to pay all costs of Notice and Settlement Administration, attorneys fees and costs as approved by the Court, and any Service Award approved by the Court—separate and apart from the funds provided to valid claimants.

Class Counsel have zealously prosecuted Plaintiff's claims, achieving the Settlement Agreement only after extensive investigation, defeating Defendants' motion to dismiss, and negotiations and months of work finalizing the Settlement Agreement and associated exhibits. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. The Short Notice was provided directly to

Settlement Class Members via first class mail. The Short Notice was sent to all 10,335 members of the Settlement Class for which information was provided to RG/2, and reached more than 97% of the Class, easily meeting the due process standard. *See* Declaration of Jessie T. Montague ("Montague Decl."), attached hereto as Exhibit 1, ¶ 13. The Short Notice provided each Settlement Class Member with information regarding how to reach the Settlement Website to make a Claim, as well as of their right to opt-out of or object to the Settlement. Out of 10,392 Settlement Class Members, only one has requested exclusion, and none have objected to the Settlement. The deadline to submit a claim was December 22, 2022.

For the reasons detailed below, Plaintiff and Class Counsel respectfully submit that the Settlement meets Rule 23's standards for final approval and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiff respectfully requests that the Court grant final approval of the Settlement and enter a final judgment dismissing the case.

## II.   FACTUAL AND PROCEDURAL SUMMARY

### A.   The Data Incident Exposes Settlement Class Members to Identity Theft

General Electric Company ("GE") contracts with Canon Business Process Services, Inc. ("Canon") to process certain benefits-related information of current and former GE employees and their beneficiaries. Consolidated Class Action Complaint ("CCAC") (ECF No. 38) ¶ 41. In the ordinary course of employment with GE, benefits-related information of certain GE employees was sent to a dedicated Canon email box (the "Canon Email Box"). In February of 2020, cybercriminals used a phishing scheme to gain access to the Canon Email Box (the "Data Incident"). *Id*. ¶ 4. Upon discovery of the Data Incident, Canon investigated and identified the individuals whose information was contained in the Canon Email Box at the time of the Data Incident. GE subsequently sent notification letters to the approximately 10,300 individuals whose

information was in the Canon Email Box at the time of the Data Incident (*id*. ¶ 4) and also notified the relevant state authorities. GE's notification stated that the type of information in the Canon Email Box (contained in documents such as direct deposit forms, driver's licenses, passports, birth certificates, marriage certificates, death certificates, medical child support orders, tax withholding forms, beneficiary designation forms and applications for benefits such as retirement, severance and death benefits and related forms and documents), may have included names, addresses, Social Security numbers, driver's license numbers, bank account numbers, passport numbers, dates of birth, and other information (collectively, "Personal Financial Information" or "PFI"). *Id*. ¶ 1.

### B.   Procedural History

Plaintiff filed the original proposed class action complaint on April 8, 2020, *see* ECF No.1, commencing this litigation against Canon and GE (the "Litigation"). On April 22, 2020, the Court accepted as a related case *Baz v. General Electric Co., et al.*, Case No. 20-cv-3149, brought by another former GE employee, Maher Baz ("Baz"), and represented by the same counsel as Plaintiff Fowler. ECF No. 10. Plaintiff and Baz filed the operative Consolidated Class Action Complaint on August 11, 2020. ECF No. 40. Defendants subsequently filed a motion to compel Baz to arbitration and a motion to stay given that, among other things, Defendants contended Baz had signed an employment agreement with GE pursuant to which he agreed to resolve disputes through a binding alternative dispute resolution procedure called the "Solutions Procedure." That arbitration agreement and dispute resolution procedure – which Defendants claim has become standard in GE employment agreements – encompassed any dispute arising out of or related to current and former employees' employment, and included a class action waiver, according to Defendants. On December 14, 2020, following Defendants' filing of their motion to compel arbitration with respect to Baz, Baz filed a notice of voluntary dismissal pursuant to Federal Rule

of Civil Procedure 41(a)(1)(A)(i). ECF Nos. 53 and 54.  Plaintiff Fowler remained as the only named plaintiff and proposed class representative on behalf of the proposed classes in the Consolidated Class Action Complaint.  The causes of action in the Consolidated Class Action Complaint included claims for: (1) negligence; (2) negligence *per se*; (3) breach of express contract; (4) breach of implied contract; (5) violation of the Florida Deceptive and Unfair Trade Practices Act; (6) violation of the New York General Business Law ("GBL") § 349; and (7) breach of fiduciary duty.  ECF No. 40.

On January 21, 2021, Defendants filed a motion to dismiss the Consolidated Class Action Complaint, (ECF No. 57, 58) for lack of Article III standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) as to the six causes of action.  Among other things, Defendants argued that Fowler failed to allege any injury-in-fact that is causally related to the Data Incident. Defendants also argued, along with other claim-specific defenses, that Fowler's supposed failure to allege damages required the dismissal of Fowler's negligence, contract, GBL § 349, and breach of fiduciary duty claims.  On August 4, 2021, the Court denied in part, and granted in part, Defendants' motion to dismiss. The Court determined that Plaintiff had Article III standing, sustained the claims for negligence and breach of implied contract, and granted the motion as to the remaining claims.  ECF No. 72.

On December 20, 2021, the parties participated in a mediation before an experienced neutral, Bennett G. Picker of Stradley Ronon Stevens & Young, LLP.  The parties were unable to reach a resolution at the mediation but continued to engage in settlement discussions thereafter, with the assistance of Mr. Picker.  Following  additional negotiations over the course of several months, including the sharing of confidential security information, the parties reached an agreement in principle on all material terms of the class settlement.  ECF No. 81.  On August 15,

2022, Plaintiff filed the unopposed Motion for Preliminary Approval, and on August 24, 2022, this Court issued its Order Granting Preliminary Approval of Class Action Settlement Agreement, Certifying Settlement Class, Appointing Class Representative, Appointing Class Counsel, and Approving Notice Plan. ECF Nos. 91, 94.

## II.      SUMMARY OF SETTLEMENT

### A.      The Class Definition

The Settlement provides for relief for a Settlement Class defined as:

> The 10,392 individuals identified on the Settlement Class List to whom GE sent letters, on or about March 20, 2020, notifying those individuals that information relating to them may have been compromised as a result of the Data Incident announced by the Defendants in March of 2020.

ECF 93-1 ¶ 1.24.

The Settlement Class specifically excludes: (i) officers and directors of the Defendants and/or the Related Entities; (ii) all Settlement Class Members who timely and validly requested exclusion from the Settlement Class; (iii) any judicial officer assigned to this case, including their staff members and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendre* to any such charge. *Id.*

### B.      Monetary Compensation

Under the terms of the Settlement Agreement, Defendants will pay each Settlement Class Member who submitted a valid Claim Form up to $3,500 for: (1) reimbursement of out-of-pocket expenses that are fairly traceable to the Data Incident; and (2) compensation for up to four hours of time spent dealing with the Data Incident, at eighteen dollars ($18) per hour. *Id.* ¶ 2.2.

To receive compensation for reimbursement of out-of-pocket costs or lost time, Settlement Class Members were required to submit a Claim Form and documentation supporting any request

for reimbursement. Defendants agreed to pay a maximum of $350,000 for valid Claims for reimbursement of out-of-pocket costs and attested time.

As of February 6, 2023, RG/2 Claims has received and processed 624 Claim Forms. Of those claims received, 181 requested reimbursement for lost time and expenses, two (2) claims requested expense reimbursement only, 354 claims were for reimbursement of lost time only, and 87 claims were submitted without an expense or lost time reimbursement amount. Montague Decl. ¶ 16. The Settlement Administrator determined that certain of the claims were incomplete and/or deficient and sent deficiency notices. Class Counsel is in the process of reviewing the work of the Settlement Administrator to ensure that Settlement Class Members with valid claims are compensated.

### C.      Credit Monitoring and Identity Theft Restoration

In addition to the cash compensation offered for unreimbursed expenses and time spent related to known identity theft and the Data Incident, each Settlement Class Member will have protection against identity theft in the future. Specifically, they will have access to eighteen (18) months of Credit Monitoring Protections provided by Aura's Financial Shield Services ("Aura's Financial Shiel"). Financial Shield offers monitoring and protection services not present in typical credit monitoring or identity theft services, including the following:

- **Transaction Monitoring** of all registered financial accounts including spending, deposits, withdrawals, transfers, and transfer requests.

- **Bank & Financial Account Monitoring** around any changes requested like new username and password, new signatory added or deleted, change of address of principal signatory, wire transfer requests to third parties, new accounts being set up using the persons SSN and DOB.

- **Home Title & Property Title Monitoring** to ensure that most family's largest asset is not hijacked and resold or mortgaged by a criminal third party.

- **Security Freeze Capability** to let consumers take control of their credit data not only at the 3 major credit bureaus but also at 7 other bureaus that can act as an early warning for a fraud event.

- **Monthly Spending Graphs** that provide detailed views of all spending and highlight any changes from month to month.

- **Dark Web Monitoring** on 17 different data points that will allow the service to give our members early warning that their PII is in play in the criminal arena.

- **Authentication Alerts** are sent to our members when their SSN is used as part of an Identity Verification Event.

- **Fictitious Identity Monitoring** alerts that notify our members when their SSN is used in association with someone else's name.

- **High Risk Transaction Monitoring** that looks for our members PII that is included in transactions like Payday Loans, new credit account openings, and the like to verify that these are legitimate events.

- **Identity and Financial Fraud restoration services** from the longest tenured and most experienced customer support team in our industry.

- **$1 million in Insurance provided by AIG** to replace any funds lost via fraud or identity theft and the reimbursement of any personal expenses including professional fees, lost wages, postage and messenger services, and much more.

Declaration of Gerald W. Thompson, ¶¶ 6 (ECF No.100).

Settlement Class Members may obtain an activation code and enroll in Financial Shield at any time during the coverage period of 18 months and obtain the benefits and protection associated with Financial Shield for the remainder of the coverage period. This is what Aura calls "open enrollment." Supplemental Declaration of Gerald W. Thompson, ¶¶ 3 (ECF No.112).

Specifically, if a Settlement Class Member finds that they have been the victim of identity theft or financial fraud at any time during the term, the Settlement Class Member can enroll at that time and receive the full benefits provided by our Financial Shield Service. This includes Aura's comprehensive restoration and remediation process that in the vast majority of cases resolves the issue. If Aura's customer support team efforts are not successful, Settlement Class Members will be assisted in submitting a claim against the $1 million in insurance provided to every Settlement Class Member by AIG. This insurance also provides for the reimbursement of any personal expenses including professional fees, lost wages, postage and messenger services, and much more. As of February 6, 2023, 221 Settlement Class Members have sought activation codes for enrolling in Financial Shield. *See* Montague Decl. ¶ 20. The activation codes will become active and Settlement Class Members will have the ability to enroll within 30 days of the Effective Date of the Settlement. SA ¶ 2.5.

Settlement Class Members are eligible for Financial Shield even if they did not submit a claim for reimbursement for Out-of-Pocket Expenses or Attested Time. SA ¶ 1.5. The cost of this benefit is to be covered by Defendants separate and apart from the monetary relief available to Settlement Class Members.

### D.    Data Security Measures

In addition to the monetary relief and credit monitoring services provided, Defendants have acknowledged and Plaintiff has confirmed that Canon has decommissioned the use of the Canon

Email Box, replacing it with an independent mechanism whereby current and former GE employees submit their benefits related information to Canon through a secure portal. SA ¶ 2.7.

### D.     Release

The release is tailored to the claims that have been plead or could have been plead in this case. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release all claims, whether known or unknown, against Defendant and its affiliates, that relate to the Data Incident. SA ¶ 6.1.

### E.     Fees, Costs, and Service Awards

The Settling Parties did not reach an agreement regarding the payment of attorney's fees, costs, expenses, and/or a service award to Plaintiff. *Id.* ¶ 7.1. On November 8, 2022 Plaintiff filed Plaintiff's Notice of Motion and Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award, along with the memorandum and declarations in support of his motion, (ECF 95-101), and on November 29, 2022 Defendant filed its opposition to the same. (ECF 102–105, 107). Defendants agree to pay Settlement Class Counsel's attorneys' fees costs, and expenses, and any service award to Plaintiff as approved by the Court within 30 days of the final, non-appealable order governing such fees, costs, expenses, and award. *See* Settlement Agreement (ECF 93-1) ¶ 7.3.

### F.     Notice And Claims

#### 1.     Direct Mail Notice

The Parties agreed upon, and the Court approved, RG/2 Claims Administration LLC ("RG/2") as the Notice Specialist and Claims Administrator in this case. ECF 94, ¶ 14. The cost of Notice and Claims Administration will be paid by Defendants separate and apart from the

Settlement benefits available to Settlement Class Members and is a separate benefit to the Class that is estimated to be worth at least $35,000. *See* Settlement Agreement (ECF 93-1) ¶ 2.9.

RG/2 began its work by providing CAFA notice on behalf of Defendant. On August 25, 2022, pursuant to 28 U.S.C. §1715(b), RG/2, on behalf of the Defendant, caused notice of this settlement and related materials to be sent to the Attorneys General of 57 U.S. states and territories as well as the Attorney General of the United States. *See* Montague Decl. ¶ 7. As of February 6, 2023, RG/2 has not received any objection or any other response from any Attorney General.

On August 24, 2022, RG/2 received the class data in an electronic file with a total of 10,335 unique Settlement Class Members. *Id.* ¶ 6. RG/2 coordinated and caused the Short Notice to be mailed via First-Class Mail to Settlement Class Members for which a mailing address was available from the class data. *Id.* ¶ 8. The Short Notice included (a) the web address to the case website for access to additional information, (b) rights and options of Class Members and the dates by which to act on those options, and (c) the date of the Final Approval Hearing. The Short Notice mailing commenced on September 23, 2022, and was completed on or before September 26, 2022. *Id.*

Prior to the mailing, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS") and updated with the correct information. *Id.* ¶ 9.

In the initial mailing campaign, RG/2 executed the Short Notice mailings to 10,335 Class Members that passed address validation. The United States Postal Service ("USPS") returned 587 Short Notices as undeliverable. Of the 587 returned, 25 included a forwarding address provided by the USPA, for the remaining 562 Notices, RG/2 performed extensive skip trace procedures and was able to locate updated addresses for 261 Class Members. RG/2 mailed new Short Notices to

these 286 Class Members for which they were able to obtain an updated address, leaving only 301

Short Notices, less than 3%, undeliverable. *Id*. ¶ 13. As of the December 22, 2022 Claims Deadline,

the Notice Program reached a total of 10,034 (**97%**) of Settlement Class Members. *Id*. ¶ 13

**G.  Settlement Post Office Box, Website, Toll-Free Number, and Email Address**

Throughout the notice and claims process, RG/2 maintained a dedicated Post Office Box

for the Settlement Program. Montague Decl. ¶ 12. This P.O. Box serves as a location for the USPS

to return undeliverable program mail to RG/2 and for Settlement Class Members to submit

Exclusion Request and other settlement-related correspondence. *Id*. The P.O. Box address appears

in all Notices and on the Settlement Website.

On September 23, 2022, RG/2 published the Settlement Website,

www.gecbpssettlement.com. *Id*. ¶ 10.  Visitors to the Settlement Website can download the Long

Form Notice, the Claim Form, as well as Court Documents, such as the Class Action Complaint,

the Settlement Agreement, motions filed by Class Counsel, and Orders of the Court. *Id*. Visitors

were also able to submit claims electronically, register for an activation code to enroll in Financial

Shield, find important dates and deadlines, and contact information for the Settlement

Administrator. *Id*. As of January 31, 2023, the Settlement Website has received 9,593 unique

visitors and 12,660 page views. *Id*.

RG/2 also established a toll-free telephone number, 1-866-742-4955 (the "Toll-Free

Number"), for class members to receive additional information about the settlement. *Id*. ¶ 11.  The

Toll-Free Number appeared in all Notices, as well as in multiple locations on the Settlement

Website. The Toll-Free Number will remain active through the close of this Settlement Program.

*Id*. Finally, RG/2 established an email address, GECBPSsettlement@rg2claims.com to provide an

additional option for Settlement Class Members to address specific questions and requests to the Settlement Administrator for support.

### H.    Claims

The timing of the Claims Process was structured to ensure that all Settlement Class Members had adequate time to review the terms of the Settlement Agreement, compile documents supporting their Claim, and decide whether they would like to opt-out or object. As of January 27, 2023, RG/2 has received 624 timely-filed claims.[1] Montague Decl. ¶ 16. As of February 6, 2023, 110 claims had been approved for expense reimbursement and/or lost time. *Id.* ¶ 19. RG/2 has issued deficiency notices to 112 claimants. *Id.* ¶ 17. The remaining 402 Claims Forms came from individuals not initially listed as Settlement Class Members. *Id.* ¶ 18 To those individuals, RG/2 has issued rejection notices, which allow the claimants the opportunity to respond with documents supporting their participation in the settlement. *Id.* The deadline for submitting this documentation has not yet expired. *Id.* Class Counsel is actively reviewing the deficiencies that were sent by RG/2 and is engaged in the process to ensure that all class members with valid claims are compensated.

### I.    Requests For Exclusion and Objections

Settlement Class Members were provided up to and including November 22, 2022—sixty (60) days from the issuance of the Notice—to object to or to submit a request for exclusion from the Settlement. *See* ECF 94. Similar to the timing of the claims process, the timing with regard to objections and requests for exclusion was structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards, which was filed fourteen (14) days prior to the deadline for

---

[1] RG/2 has sent deficiency letters out to certain Class Members in connection with their claim submissions. Class Counsel are reviewing those letters and remain engaged in the claim administration process to ensure that all Class Members with valid claims are compensated.

Settlement Class Members to object or exclude themselves from the Settlement. As of the November 22, 2022 opt out date, RG/2 had received only five (5) requests for exclusion. Admin Decl. ¶ 14. As of February 6, 2023, RG/2 was not aware of, and had not received, any objections. *Id*. ¶ 15.

As of January 30, 2023, Class Counsel had not received any objections to the Settlement Agreement or to the motion for fees, reimbursement of costs, and Service Award.

## III.    LEGAL STANDARD

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), which states that a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the Settlement Class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014). A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 619–22 (1997).

This Court has considered and granted preliminary approval of class certification. ECF 94. As Plaintiff set forth at length in his Motion for Preliminary Approval (ECF 91-92), the proposed Settlement Class satisfies all of the requirements of Rules 23(a) and 23(b)(3). The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common

issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes.

The Court must next determine if the settlement is fair, reasonable, and adequate under Rule (23)(e). Prior to the 2018 amendment of Rule 23, to determine procedural fairness, Second Circuit courts looked to the negotiating process that led to settlement, and to determine substantive fairness, they would review the settlement in light of the factors set forth in *City of Detroit v. Grinnell Corp.* (the "*Grinnell* factors"). *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Since the amendments were instituted, the Second Circuit examines the settlement in light of both the new requirements of Rule 23 and the *Grinnell* factors, many considerations of which overlap. *See e.g. In re GSE Bonds Antitrust Litigation*, 2020 WL 3250593 (S.D.N.Y. June 16, 2020) (granting final approval of class action settlement after consideration of both Rule 23 and the *Grinnell* factors).

Courts examine both procedural and substantive fairness in light of the strong judicial policy in favor of settlement—especially in class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 52 (W.D.N.Y. 2018) ("Settlements are strongly favored as a matter of policy, because, '[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time.") (internal quotations omitted); *Springer v. Code Rebel Corp.*, 2018 WL 1773137 at *7 (S.D.N.Y. Apr. 10, 2018) (same*); Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y Sept. 24, 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and

favored by public policy.") (quoting *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. Feb. 18, 2005), *aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2006)); *see also In re Luxottica Group S.P.A. Secs. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y.2006); *see also Hadel v. Gaucho*, 2016 WL 1060324, at *4 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). "A presumption of fairness may attach to a proposed settlement when the terms of that settlement were reached by experienced counsel during arm's-length negotiations undertaken after meaningful discovery." *Hart v. RCI Hosp. Holdings, Inc.*, 2015 WL 5577713, at *7 (S.D.N.Y. Sept. 22, 2015).

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.   The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as well as Rule 23

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B); *In re GSE Bonds Antitrust Litigation*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *GSE Bonds*,

414 F. Supp. 3d at 702, quoting *Wal Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 112 (2d

Cir. 2005). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the content of the Notice adequately informed Settlement Class Members of the

nature of the action, the definition of the class, the claims at issue, the ability of a class member to

object or exclude themselves, and/or enter an appearance through an attorney, and the binding

effect of final approval and class judgment. The Notice utilized clear and concise language that is

easy to understand and organized the Notice in a way that allowed Class Members to easily find

any section that they may be looking for. Thus, it was substantively adequate. *See Hernandez v.

Immortal Rise, Inc*., 306 F.R.D. 91, 99 (E.D.N.Y. 2015); *see also Hall v. ProSource Technologies,

LLC*, 2016 WL 1555128, at *5 (E.D.N.Y. 2016) (finding the notice sufficient where "[t]he Notice

and Claim Form described essential and relevant information in plain terms, including, among

other things, relevant background information, the terms of the Settlement Agreement, the

allocation methods applicable to the respective subclasses, and the various rights of potential class

members, such as the right to opt out of the Settlement Class or object to the instant Final Approval

Motion"); *Torres v. Gristede's Operating Corp*., 2010 WL 2572937, at *3 (S.D.N.Y. June 1, 2010)

("The Notice is appropriate because it describes the terms of the settlement and provides specific

information regarding the date, time, and place of the final approval hearing.").

Moreover, the Settlement Administrator—with the assistance of the Parties—has taken all

necessary measures to ensure notice reached as many of the Settlement Class Members as possible.

Such notice complies with the program approved by this Court in its Preliminary Approval Order,

is consistent with Notice Programs approved in the Second Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010) *see also, Cicciarella et al v. Califia Farms, LLC*, 2020 WL 1320866 (S.D.N.Y. 2020) (approving notice that was projected to reach 70% of class members).

### B.   The Settlement Terms Are Fair, Adequate, and Reasonable, and Warrant Approval

Federal Rule 23(e)(2) requires certain factors to be considered by a court before granting final approval of a class action settlement: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

> Before the 2018 revisions to Rule 23(e), the Second Circuit had developed its own list of factors for consideration in determining whether to approve a class action settlement. These factors, known as the Grinnell factors[,] include:(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009), citing *Grinnell*, 495 F.2d at 463 (2d Cir. 1974) (abrogated on other grounds). While there is some overlap between

the two sets of standards, as is consistent with practice in the Southern District of New York,

Plaintiff will examine the Settlement for satisfaction of both the Rule 23 factors as well as the

*Grinnell* factors that have been historically considered by Second Circuit Courts. *See e.g. GSE*

*Bonds*, 2020 WL 3250593 (granting final approval of class action settlement after consideration

of both Rule 23 and the *Grinnell* factors). Here, the Agreement reached by Parties meets the

standards set forth by Federal Rules of Civil Procedure and the *Grinnell* factors weigh in its favor.

Accordingly, the Court should grant final approval.

### C.   The Settlement Agreement Meets the Requirements of Rule 23 and Should Be Approved

#### 1.   The Class Representatives and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires a Court determine whether "the class representatives and class

counsel have adequately represented the class" before approving a settlement. "Determination of

adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the

interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and

able to conduct the litigation." *GSE Bonds*, 414 F. Supp. 3d at 692, quoting *Cordes & Co. Fin.*

*Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 99 (2d Cir. 2007) (internal quotations omitted).

Here Plaintiff has assisted Class Counsel by providing documents, reviewing pleadings,

keeping in contact with counsel, remaining available for consultation throughout the settlement

negotiations and answering counsel's many questions and reviewing the Settlement Agreement.

Plaintiff does not have any conflict with the proposed Settlement Class and has adequately

represented them in litigation, and in bringing this case to successful resolution with significant

benefits available to the Settlement Class. Specifically, Plaintiff is a part of the same Settlement

Class, suffered the same injury, has the same interest in in protecting his private information from

disclosure, and as discussed at length in Plaintiff's motion for fees, seeks only a modest Service Award compared with those sought by plaintiffs in other class actions.

Class Counsel has also adequately represented the Class. Class Counsel is experienced in the litigation, certification, trial, and settlement of class action cases. Klinger MPA Decl., (ECF 93), ¶ 4; Klinger Decl. in Support of Motion for Attorneys' Fees, (ECF 97), ¶ 6; Leslie Decl. Ex. A (Bursor & Fisher, P.A. firm resume), (ECF 96); Rivas Decl. Ex. A (Gibbs Law Group, LLP firm resume), (ECF 99). In negotiating the Settlement Agreement, Class Counsel had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other cases involving data breaches and consumer privacy. *Id.* This understanding of the intricacies of the data breach and consumer privacy space provided Class Counsel with the tools and perspective to achieve an outstanding recovery for the Class—and prepared them to litigate this Action to a successful conclusion if necessary.

Before filing that Complaint, Class Counsel investigated the potential claims against Defendants. Class Counsel gained additional information and understood very well the strength and weaknesses of the case through the litigation process, including the motion practice and informal discovery disclosed during the settlement negotiations. This information was essential to Class Counsel's ability to evaluate the strength of the Plaintiff's legal claims, the risks of this litigation and the benefits to the Class. Class Counsel also expended resources researching and developing the legal claims at issue. Armed with their knowledge from other data breach and consumer privacy matters and their investigation into this specific case, Class Counsel was well positioned to evaluate the strengths and weaknesses of Plaintiff's and the Class's claims, and the appropriate basis upon which to settle them.

Accordingly, this Court should find Plaintiff and Class Counsel adequate representatives for the Class and weigh this factor in favor of Final Approval.

### D.      The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arms-length." Where a class settlement is reached through arm's length negotiations between experienced counsel, the settlement will enjoy a presumption of fairness. *GSE Bonds*, 414 F. Supp. 3d at 692, *citing In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 173-174 (S.D.N.Y. 2000). Here, the Settlement has certainly earned the presumption of fairness. Both Parties were represented by counsel experienced in class action and data breach litigation. The settlement negotiations were protracted and exceptionally hard-fought over nearly eight months.  There is no question that the Parties stand at arm's-length and stood at arm's-length throughout these settlement negotiations. Thus, the settlement negotiations were free from collusion, conducted at arm's length, and meet the requirement of Rule 23(e)(2)(B).

### E.      The Monetary Relief Provided for the Settlement Class is Adequate

Rule 23(e)(2)(c) requires examination of the relief provided by the Settlement. This relief is consistent with relief provided in other similar data breach cases approved by Courts across the United States. *See, e.g., Cece et al. v. St. Mary's Health Care System, Inc. et al*., No. SU20CV0500 (Ga. Super. Ct. Athens/Clarke Cnty.) (final approval granted of data breach class action settlement on April 4, 2022 with out-of-pocket loss reimbursement of $750 and 2-years credit monitoring); *Jackson-Battle v. Navicent Health Inc*., No. 2020-CV-072287 (Ga. Super. Cnty. Bibb Cnty. Aug. 4, 2021) (providing $200 per person for reimbursement of ordinary expenses that include lost time of up to 4 hours of lost time at $15 per hour, and $2,500 in extraordinary expenses, all uncapped in the aggregate); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.

Dec. 22, 2020) (providing up to $280 in value to settlement class members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh v. IvyRehab Network, Inc*., No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member for out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancement).

When, as here, a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, a settlement is reasonable under this factor." *Massiah v. MetroPlus Health Plan, Inc*., 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) (citations omitted).

### F.    The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor of Final Approval

The relief to the Settlement Class is more than adequate in light of the costs, risks, and time required to litigate this action through trial and appeal. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc*., 2011 WL 754862, at *11 (E.D.N.Y. Feb. 18, 2011). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, 2007 WL 927583, at *30 (S.D.N.Y. Mar. 27, 2007); *accord Zeltser v. Merrill Lynch & Co*., 2014 WL 4816134, at *14 (S.D.N.Y. Sep.23, 2014). "The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp*., 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley v. Midan Rest. Inc*., 2016 WL 1274577, at *9 (S.D.N.Y. 2016) ("Most class actions are inherently complex[.]").

This litigation is no different. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). As one federal district court recently observed in finally approving a settlement with similar class relief:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

*Fox v. Iowa Health Sys*., 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, cybersecurity incident cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any cybersecurity incident case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21, 31-33 (D. Me. 2013).

Class certification is another hurdle that would have to be met—and one that been denied in other data breach cases. *See, e.g., In re Hannaford,* 293 F.R.D. at 35. Further, if Plaintiff is successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA Inc*., 2015 WL 5444651, at *11 (S.D.N.Y. Sep. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to

decertify by defendants, requiring additional briefing."). Plaintiff would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiff and putative class members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval. *See Babcock v. C. Tech Collections, Inc.*, 2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017) (class settlement "eliminates the risk, expense, and delay inherent in the litigation process.")

While Plaintiff is confident in the strength of his claims, he is also pragmatic in his awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant consistently denied the allegations raised by Plaintiff and made clear at the outset that it would vigorously defend the case. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. This weighs strongly in favor of final approval.

### G. The Effectiveness of Any Proposed Method of Distributing Relief to the Settlement.

The method for processing Settlement Class Members claims weighs in favor of final approval. The Parties have retained an experienced Settlement Administrator, RG/2 Claims Administration, LLC, who routinely processes class claims and distributes the proceeds to claimants. Distribution of relief is effective in that all Settlement Class Members are eligible to make Claims for reimbursements for expenses and time related to the Data Incident, and payments will be made promptly upon the Effective Date of the Settlement and approval of the Claims. Upon Final Approval of the Settlement and the close of the Claims Period, and within either sixty (60)

days of the Effective Date or thirty (30) days from the date the last Claim is approved (whichever is later), the Settlement Administrator will mail payments to Settlement Class Members.

As explained by the 2018 Committee Notes, a "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." The proposed method of processing claims here strikes that delicate balance, and this factor also weighs heavily in favor of approval.

### H.      The Terms of the Proposed Award of Attorneys' Fees Weigh in Favor of Final Approval

The Settlement Agreement provides that Defendants will pay Class Counsel's attorney's fees and reimbursement of expenses as approved by the Court. SA ¶ 3.2. On November 8, 2022, Plaintiff separately moved for an award of attorneys' fees, reimbursement of expenses, and for a Service Award. ECF Nos. 95, 96, 97, 98, 99, 100, 101. Whether the Court utilizes the percentage-of-the-fund approach, or the lodestar multiplier approach, the requested fees and reimbursement of expenses are fair and reasonable as Plaintiff explained in the fee papers.

### I.      There Are No Agreements Required to Be Identified Under Rule 23(e)(3)

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement.

### J.      The Settlement Treats Class Members Equitably Relative to Each Other.

Each member of the Settlement Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award. As described above, each Settlement Class Member is eligible to make a Claim for the same ordinary expense reimbursements, as well as the credit monitoring/identity theft protection being provided to all Class Members without the need to submit a claim. Additionally, any Settlement Class Member who felt he/she had a more

valuable Claim had the opportunity to opt-out of the Settlement and pursue it. *McWhorter v. Ocwen Loan Servicing LLC*, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019) (finding settlement class members' ability to exclude themselves form a settlement as a symbol of equitable treatment and weighing it in favor of final approval).

### K.   The Settlement Also Warrants Approval in Light of the *Grinnell* Factors Traditionally Considered by Second Circuit Courts

#### 1.   *Grinnell* Factor 1: The complexity, expense, and likely duration of litigation weighs in favor of approval

The costs, risks, and delay of continued litigation weigh in favor of settlement approval. The risks Plaintiff faced in this litigation are substantial and cannot be disregarded. Aside from the potential that either side will lose at trial, Plaintiff anticipates incurring substantial additional costs in pursuing this litigation further. As discussed above, data breach litigation is difficult, complex, and the rapid evolution of caselaw make outcomes uncertain. Moreover, while early settlement has allowed costs to stay modest, and the Settlement Agreement provides for such costs to paid for separate and apart from the funds available to the Class—protracted litigation would only serve to increase costs and have a potentially negative affect on Class recovery, which is itself far from certain. Continued litigation would also increase the burden on the Court, without any guaranteed benefit to Plaintiff or Settlement Class Members. "Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR–AM Chem. Co.*, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). Where a settlement, like here, "will alleviate the need for judicial exploration of . . . complex subjects [and [ reduce litigation costs" this factor weighs in favor of approval. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d at 1324 (S.D. Fla. 2005).

**L.**   ***Grinnell* Factor 2: Class reaction signals approval of the Settlement Agreement**

Courts consistently determine that the reaction of a class to settlement is "perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp*., 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); Fed. R. Civ. P. 23(e). Here, only five Settlement Class Members opted out, and <u>none</u> have objected. Montague Decl. ¶ 14. This is an outstanding result and a clear signal of the Settlement Class's approval of the Settlement.

The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc*., 2003 WL 21136726, at *1  (S.D.N.Y. May 15, 2003); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96 (2d Cir. 2005) (affirming approval of class action settlement with 18 merchant objectors). Here, the reaction of the class has been overwhelmingly positive. There have been no objections and a single exclusion. The Class has spoken and overwhelmingly approves the Settlement. This factor weighs in favor of approval of the Settlement.

**M.**   ***Grinnell* Factor 3: The stage of litigation and discovery completed favors approval**

Courts encourage the efficient resolution of class actions where warranted. Early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Castagna v. Madison Square Garden, L.P*., 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees); *Diaz v. E. Locating Serv. Inc*., 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Secs. Litig*., 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The central

question often considered by courts in examining the stage of litigation is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d. Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (internal quotation marks omitted). Here, the Parties acted responsibly in reaching an early settlement of this case. As stated *supra*, Settlement Class Counsel is experienced in class action and data breach litigation. The Settlement was also only reached after extensive investigation, gathering information from the named Plaintiff, motion practice, and contentious mediation. Thus, early settlement was appropriate and this factor weighs in favor of approval.

### N.   *Grinnell* Factors 4, 5, and 6: The risks of establishing liability, damages, and maintaining a class action through trial weigh in favor of settlement approval

Although Plaintiff believes in the merits of the case at the outset, continued litigation involves significant risk. *See In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id., quoting In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv.*, Inc., 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation.") citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 185 (W.D.N.Y. 2005). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. Jan. 6, 2000) (internal quotation marks omitted).

As noted above, data breach litigation is complex and the caselaw is rapidly evolving. Continued litigation would involve extensive motion practice, including the need for Plaintiff to both gain and maintain class certification. This is far from a certain proposition in data breach

litigation. *See Steinmetz v. Brinker Int'l, Inc.*, No. 21-13146 (11th Cir. Sept. 16, 2021) (data breach case that recently obtained class certification; now on appeal at the Eleventh Circuit). Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted).

> **O.    *Grinnell* Factor 7: The ability of the Defendant to withstand a greater judgment is not at issue here**

Defendants provide no evidence demonstrating they could not withstand a greater judgment here. However, even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.,* 228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting final approval.

> **P.    *Grinnell* Factors 8 and 9: The Settlement provides for substantial relief for the Settlement Class, especially in light of all attendant risks of litigation**

As discussed above, the Settlement guarantees Settlement Class Members real relief for their injuries and provides significant protection for *every single Class Member* by way of the Financial Shield. The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain. Plaintiff understands and appreciates that Defendants will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiff to the risks inherent in trying to achieve and maintain class certification and prove liability—both factors considered under the test for final approval established by *Grinnell*.

It is obvious that Plaintiff's success at trial is far from certain. Every day that passes is another day that the Plaintiff and Settlement Class Members go without the reimbursement provided by the Settlement. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

## V.     CONCLUSION

Plaintiff has negotiated a fair, reasonable, and adequate Settlement that guarantees Settlement Class Members who make a claim significant relief in the form of cost and time reimbursements, financial asset and credit monitoring protections, and equitable relief consisting of increased data security safeguards. The Settlement Agreement was reached only after extensive arm's-length negotiations, and an assessment of both the *Grinnell* factors and the revised Rule 23 factors weighs in favor of Final Approval. For the reasons discussed above, and for those described in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 91-92) and Plaintiff's Motion for Attorneys' Fees, Costs and Service Award (ECF 95-101), Plaintiff respectfully requests this Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class, appoint Settlement Class Counsel and Plaintiff as representatives for the Settlement Class, award Plaintiff a service award in the amount of $1,500, grant Settlement Class Counsel's motion for attorneys' fees and reimbursement of expenses, and grant final approval of this Settlement.

Dated: February 8, 2023                              Respectfully submitted,

                                                     *s/ Gary M. Klinger*
                                                     Gary M. Klinger
                                                     **MILBERG COLEMAN BRYSON**
                                                     **PHILLIPS GROSSMAN, PLLC**
                                                     227 W. Monroe Street, Suite 2100
                                                     Chicago, IL 60606
                                                     Phone: (866) 252-0878
                                                     gklinger@milberg.com

Joseph I. Marchese
Alec M. Leslie
**Bursor & Fisher, P.A.**
888 Seventh Avenue
New York, NY 10019
Tel: 646-837-7150
Email: jmarchese@bursor.com
aleslie@bursor.com

Rosemary M. Rivas
**Gibbs Law Group LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel: 510-350-9700
Email: rmr@classlawgroup.com

*Attorneys for Plaintiff and the Class*